1
2
3
4
5
6
7
8
9
10              THE UNITED STATES DISTRICT COURT
11           WESTERN DISTRICT OF WASHINGTON STATE
12  _____
13  ROBERT BERGSTROM,                        )

14  *AND* THOMAS BERGSTROM                    )

15  *HEIRS REPRESENTING DECEASED*            )

16  *NAVY CAPT.* EDWARD BERGSTROM            )

17                          Plaintiff,        )

18              v.                            )        Case. No.  21-CV-00055

19  THE UNITED STATES NAVY                    )

20  SECRETARY KENNETH BRAITHWAITE,           )

21  THE DEPARTMENT OF DEFENSE,               )

22  THE UNITED STATES OF AMERICA,            )

23                          Defendants.       )

24  _____  )

25                        **COMPLAINT**

26      1.      Plaintiffs bring this action against Defendants and allege:

27                        **INTRODUCTION**

28      2.      This is **not an award upgrade request**, but a cause of action seeking the original

---

Complaint Case No. 21-cv-00055              1              Law Firm of Ryan Sweet  253-642-7447
                                                          PO Box 4784 Spanaway WA 98387

1   award, redress and damages for the continued plain, clear, unmistakable, and administrative

2   errors and injustice perpetuating the wrongful continued denial to posthumously award the

3   earned, originally recommended, legally and statutorily consistent and correct military Navy

4   Cross decoration which has been denied Plaintiffs due to errors and procedural irregularities.  It

5   was earned and recommended for undisputed documented heroism as a Navy pilot engaged in

6   heroic aerial combat on United States territory in the World War II Aleutian Islands campaign to

7   repel occupied Japanese invaders, which his peers were awarded and received the Navy Cross

8   for similar actions.  Our extensive review shows that awards appear blatantly arbitrary.

9   Defendant's frustrating entrenched refusal to correct plain errors and award the originally

10   recommended Navy Cross, despite implicitly agreeing in 2010 with his 1942 Commander's

11   recommendation, is plainly an abuse of discretion making the award process arbitrary and

12   capricious rather than meritorious.  Plaintiffs seek restoration of his original Navy Cross.  There

13   is no legitimate dispute and Plaintiffs seek Rule 56 Summary Judgment, filed separately.

14         3.     Further, independent contemporaneous corroborating evidence proves that LT

15   Bergstrom attacked and deterred an enemy submarine hunting a large U.S. Naval troop transport

16   vessel in contested frigid waters, but LT Bergstrom was never officially credited with this act

17   and he should be awarded a Navy Cross.  Plaintiffs seek official written Navy recognition for

18   this act, whether as part of his amended original Navy Cross or a separate retroactive award

19   commensurate with such heroics (at least one other peer pilot, C.B. Jones, received two awards –

20   A Navy Cross and a Distinguished Flying Cross – for the separate conduct in the same

21   campaign). (Exs. 11-13, 6-7)  Plaintiffs seek Rule 56 Summary Judgment.

22         4.     Plaintiffs seek Summary Judgment order directing Defendants review and give

1   official credit for any other individual acts, such as documented heroics on in January 1942 at

2   Ambon Island in the Dutch East Indies.  Japanese military hunted American forces and attacked

3   them there.  LT Bergstrom never received official citation or decoration for his individual heroic

4   actions in rushing to his plane sitting idle, and flew his plane and crew to safety from the harbor,

5   where Japanese destroyed idle seaplanes at rest. (Ex. 26)  His heroics saved lives and aircraft.

6        5.     Plaintiffs seek Summary Judgment order directing Defendants review and give

7   official credit for documented heroics when he engaged enemy Japanese Zero fighter planes and

8   was shot down in December 1941.  Heavily outnumbered and shot down, he managed a safe

9   evasion and landing his damaged aircraft. (Ex. 14) His heroics saved lives and valuable aircraft.

10        6.     As of 2018, Plaintiffs received "final" action, having exhausted all reasonable

11   administrative efforts and Defendants are entrenched in denial, citing "*procedural regularity*" in

12   spite of open, plain, material, and systematic errors and procedural irregularity that Defendant

13   continually refuses to acknowledge and correct.

14        7.     This issue is larger than the refusal to award the Navy Cross to a heroic pilot who

15   was recommended for it and his peers (not suffering errors) received it. The fidelity and integrity

16   of the Naval award process is called into question given the repeated glaring errors and

17   bewildering continued dishonest refusals to acknowledge plain errors and take the appropriate

18   remedial actions, but instead abusing its authority and discretion entrenching itself in untenable

19   deception for no apparent good reason, claiming "*procedural regularity*" and denying mistakes

20   were made when the opposite is obvious.  Defendant's denials are Orwellian "*Newspeak*,"

21   claiming that which clearly exists, does not.  We present official Naval documents which plainly

22   prove the repeated errors and omissions, and the Navy has misled several members of United

1  States Congress and my client for many years, denying relief through unfair deception,

2  irrelevant, or obfuscating replies.  This is arbitrary, wrong, and warrants correcting.

3        8.      Collateral to this is economic relief sought for legal expenses and other economic

4  harm in seeking correction of this record.   Plaintiff seeks Summary Judgment for damages.

5        9.      This Complaint may appear redundant at times.  This redundancy reflects the

6  continued redundant plain errors causing injustice that occurred for many decades.  The Navy

7  has had all of these records and plain arguments for decade(s) and refused appropriate award(s).

8  **PARTIES**

9        10.     Plaintiffs are Washington State brothers Robert Bergstrom of Vancouver and

10  Thomas Bergstrom of Seattle, the sons and heirs of deceased World War II Navy pilot Captain

11  Edward Bergstrom, who have standing acting on Captain Bergstrom's behalf (he was call sign

12  "22V3" in unit "VP-42," or "VP-102" or "Patrol Wing Four," hereafter known as "LT

13  Bergstrom," "Capt. Bergstrom" or jointly with sons as "Plaintiff(s)").

14        11.     Defendant is the United States of America, acting by and through the Department

15  of the Navy, and Department of Defense, United States government agencies, and Naval

16  Secretary Kenneth Braithwaite.  This Complaint may interchangeably refer to the Defendant(s)

17  as the "United States," "Navy," or "Defendant(s)."

18  **NATURE OF EVIDENCE**

19        12.     Evidence, citations, representations, and argument provided in support of this

20  Compliant are based upon official sources, either the Federal Courts, United States military,

21  federal agencies, contemporaneous media information, and/or compiled from same.  Many

22  exhibits were obtained from Defendants through FOIA or records requests and presumably

1  declassified, many marked as such.  Others were official correspondence or open source media.

2  Some are poor quality, vague, coded, incomplete, or cryptic presumably for military secrecy, or

3  not as legible or thorough as desired.  This may have been wartime deception, or due to austere

4  conditions, expedience, other mission related priorities, or the technology of the era.

5       13.     For simplicity, on some Exhibits hand written arrows, notes, or comments are

6  included for Judicial aid, efficiency, clarification, or to direct attention to the important details on

7  unclear or cryptic documents.  No markings have altered the context of the original copies of

8  documents which can be provided at the Court's request.

9       14.     All are either non-hearsay or business record exceptions to the hearsay rule, or

10  other exceptions, and/or compiled directly from same.  Federal Rules of Evidence Rules 801-

11  807, specifically Rule 803(6), Exceptions to Hearsay, records normally kept in the course of an

12  activity and 803(8), public records, 803(16) statements made in pre-1998 documents, and

13  803(19) reputation concerning family history.

14                          **QUESTIONS PRESENTED**

15       15.     Is the act of attacking an enemy submarine and thereby deterring a Japanese

16  submarine attack against a United States Naval vessel, saving lives and critical equipment, a

17  material event worthy of official Navy Cross or significant recognition?  We believe it is.

18       16.     Are military awards, particularly the Navy Cross, materially important?  We

19  believe the evidence shows answer is "yes."

20       17.     If one is denied a military award that was earned and recommended, and awarded

21  peers under the same circumstances where they did not suffer errors, due to plain clerical errors

22  and omissions, is that a "material error or injustice?"  We believe it is.

1    18.    Should retroactive awards be made when evidence is presented?  "Yes."

2    19.    Does the Navy have an affirmative obligation to provide accurate and complete

3    records without material errors or omissions?  We believe it does.

4    20.    Should military awards systems be awarded based on merit particularly when

5    original recommendations were made, for fairness and consistency, provided they meet the legal

6    criteria, absent factual reasons for a different award?   For many reasons including fairness and

7    integrity, we believe the answer is "yes."

8    21.    Are clerical and procedural errors evidence of "*procedural regularity*" or

9    "*irregularity*?"  We believe this is evidence counter to procedural regularity, in spite of

10   Defendant's assertions.  Material errors tend to prove "*irregularity.*"

11   22.    In the face of plain errors being the underlying reason for the continued award

12   denial, is it reasonable or unreasonable for the Navy to continue to claim "*procedural*

13   *regularity*?"  We believe the answer is that these responses are unreasonable.

14   23.    Should clerical errors alone be sufficient to deny and continue to deny a service

15   member of a recommended and materially important military combat decoration when there it

16   otherwise meets the criteria and peers received the decoration?  We believe clerical errors are

17   insufficient justification to continue to baselessly deny this award.

18   24.    Do equal protections apply for awardees who did materially similar acts and were

19   recommended for and received the same Navy Cross award, but different awards were

20   authorized?  No reasonable alternate explanation has been given for the continued denial.  We

21   believe equal protections apply, and were violated, mandating the approval of the Navy Cross

22   decoration and a possible separate award in the absence of any reasonable alternate explanation.

1    25.    If it is determined the Defendants have acted unreasonably and those actions

2    caused continued expensive appeals to correct the injustice, should the Defendants pay the costs

3    Plaintiffs incurred in pursuing justice which should have been granted in 2003 when Defendants

4    notified?  We believe Defendants should be ordered to reimburse Plaintiff's damages.

## JURISDICTION, STATUTE OF LIMITATIONS, STANDING, AND LEGAL AUTHORTY

5
6
7
8    26.    This Court has jurisdiction over this Federal Question case and controversy

9    pursuant to 28 U.S. Code §1331 because this explicitly involves laws, rule, and regulations

10   governing the United States Armed Forces.

11   27.    This Court has original jurisdiction over this action pursuant to the Administrative

12   Procedure Act, 5 U.S. Code §702, et. seq., for which the Statute of Limitations is six (6) years

13   pursuant to 28 U.S.C. §2401, and where Plaintiff seeks relief to correct an administrative agency

14   injustice(s).  Likewise, pursuant to Administrative Procedure Act 5 U.S.C §§552 et seq. this

15   Court has jurisdiction to order the production of accurate records and may grant relief for

16   economic harm and award reasonable legal fees and costs.  The Navy has unreasonably withheld

17   accurate records.  In this case the injustice is the incorrect and incomplete Department of Navy

18   records, and reasonable legal fees and costs, for which this Court can grant relief.

19   28.    This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C.

20   §1491(a), et. seq. for which the Statute of Limitations is six (6) years pursuant to 28 U.S.C.

21   §2401.  It authorizes liquidated and unliquidated damages not sounding in tort, and the Court

22   may act or direct the correction of applicable records and declaratory and injunctive relief.

23   29.    According to 10 U.S. Code §1552(b) "Correction of Military Records," the time

1   limit for application for correction of military records is three (3) years, absent a showing of

2   injustice.  In the latter case, the Secretary of the Navy may accept appeals to the Naval Boards

3   for correcting said records, and has done so as recently as 2018 and invited Plaintiff to seek

4   judicial recourse.  By accepting the requests, the Defendant waived the applicable time bar

5   Plaintiffs file within six (6) or three (3) years from 2018.  "Military Secretaries may review a

6   serviceman's record, acting through the correction boards such as the BCNR, to '*correct an*

7   *error or remove an injustice*' to ensure that the serviceman's record accurately reflects his

8   military career. 10 U.S.C. §1552 (1970); *King,* 19 Cl.Ct. at 705.  A correction board acts in

9   violation of this mandate, and thus arbitrarily or capriciously, if it does not correct blatant

10   injustice in the record.  *Id.  See Skaradowski v. United States,* 200 Ct.Cl. 488, 471 F.2d 627

11   (1973)."  *Swann v. Garrett*, 811 F. Supp. 1336, 1340 (N.D. Ind. 1992).

12       30.       The 28 U.S.C. §2401(a) Statute of Limitations is six (6) years for these legal

13   actions, wherein every civil action is barred unless commenced within six (6) years after the first

14   right of action accrues.  The Navy took final action in October 2018 giving rise to the

15   "*Exhaustion Rule*" creating the vested 2018 right of action.

16       31.       The "*Exhaustion Rule*" requires that service members exhaust administrative

17   remedies before taking legal action.  This has been succinctly articulated in *Dougherty v. U.S.*

18   *Navy,* 784 F.2d (1986);  "*Judicial review of action by an agency such as the BCNR is provided*

19   *for in the Administrative Procedure Act, 5 U.S.C. § 702 (1977).  The action is governed by the*

20   *six-year statute of limitations codified at 28 U.S.C. § 2401 (1978).  If the six-year statute of*

21   *limitations runs from the date of discharge, then review by the district court would be precluded.*

22   *If the statute of limitations does not begin to run until the BCNR acts, then this suit is timely. We*

1     *must decide when the statute of limitations begins to run in a case challenging the action of the*

2     *BCNR as arbitrary and capricious where monetary damages are not at issue.*"  *Dougherty v.*

3     *U.S. Navy Bd. for Corr*, 784 F.2d 499, 500-1 (3d Cir. 1986).  See also *Swann v. Garrett*, 811 F.

4     Supp. 1336 (N.D. Ind. 1992), and *Jones v. New York Military and Naval Affairs*, 166 F.3d 45

5     (1998). *See also, Yagjiam v. Marsh,* 571 F. Supp. 698, 706 (D.N.H.1983);  *Bethke v. Stetson,* 521

6     F. Supp. 488, 490 (N.D.Ga.1979).

7           32.     Plaintiffs timely file this action.  Plaintiffs have pursued relief for this ongoing

8     1942 error and injustice through the Defendant's various Naval Administrative Boards, which

9     waived any pertinent 10 U.S. Code §1552(b) Secretarial Statutes of Limitations in granting

10     administrative reviews in the interest of justice.   Upon discovery of the error circa 2002

11     Plaintiffs appealed and Defendants considered and denied relief in 2003, 2010, 2015, and 2018

12     when taking final action on 11 October 2018, stating in summary that the Board accepted and

13     reviewed new information, apparently gave a de novo review of the evidence and case history,

14     determined it was insufficient to grant relief, and took apparent final action stating, "*In the*

15     *absence of new and material evidence… the decision of the Board is final, and your only*

16     *recourse would be to seek relief…from the court of the appropriate jurisdiction.*"  The Naval

17     actions and invitation to seek judicial relief demonstrate that the Plaintiff's did not exhaust

18     administrative remedies until 11 October 2018, which is the correct start of the relevant Statute

19     of Limitations.  In the alternative, these Naval actions restarted and tolled the Statute of

20     Limitations during Administrative reviews.  In either event, Plaintiff timely files this action.

21           33.     The 14th Amendment "*Equal Protections Clause*" states that, "*…nor shall any*

22     *state deprive any person of life, liberty, or property, without due process of law; nor deny to any*

1   *person within its jurisdiction the equal protection of the laws.*" [1]  This Court has jurisdiction over

2   this federal question.  Captain Bergstrom was arbitrarily treated materially disparately versus his

3   peers, having been deprived of materially correct administrative records, plainly due to error(s).

4     34. As legal heirs, the Plaintiffs have standing to correct their father's military

5   administrative records pursuant to 10 U.S.C. §1552 ("Correction of Military Records") and

6   pursue damages pursuant to the APA and Tucker Act.  Harm occurred in the wrongful denial of a

7   prestigious decoration(s), further economic harm was caused by the continued denial of same,

8   this was due to (unreasonable) Naval errors, and this Court has the authority to correct same.

9   Duty, breach, causation, and injuries are all plainly addressed herein.

10     35. In the 65th Congress, Sess. III, Article 1709, criteria for the Navy Cross was

11   established for one who *"…has distinguished himself by extraordinary heroism or distinguished*

12   *service in the line of his profession such heroism or service not being sufficient to justify the*

13   *medal of honor or distinguished service medal."* (Ex. 1) His conduct and his Commander's

14   contemporaneous observations and recorded recommendations qualify.

15     36. Pursuant to 10 U.S.C. §1130(c), *"… determinations under this section regarding*

16   *the award or presentation of a decoration shall be made in accordance with the same*

17   *procedures that apply to the approval or disapproval of the award or presentation of a*

18   *decoration when a recommendation for such an award or presentation is submitted in a timely*

19   *manner as prescribed by law or regulation."*

20     37. "A decision of the BCNR may not be overturned unless it is **arbitrary or**

21   **capricious, not supported by substantial evidence, or contrary to law or regulation**.

---

[1]   United States Constitution, Bill of Rights, Amendment 14, Clause 1.

1   *See Chappell v. Wallace,* 462 U.S. 296, 303, 103 S. Ct. 2362, 2367, 76 L. Ed. 2d 586

2   (1983); *Horn v. Schlesinger,* 514 F.2d 549, 553 (8th Cir.1975); *Henry v. Dept of Navy, Bd. for*

3   *Correction of Naval Records,* 755 F. Supp. 1442, 1448 (E.D.Ark.1991); *King v. United*

4   *States,* 19 Cl.Ct. 703, *aff'd,* 918 F.2d 186 (Fed.Cir.1990); *Blassingame v. Secretary of Navy,* 678

5   F. Supp. 416, 418 (E.D.N.Y. 1988).  Swann has the burden of meeting this standard with 'cogent

6   and clearly convincing evidence.'  *Cooper v. United States,* 203 Cl.Ct. 300, 304 (1973).  Swann

7   must overcome the presumption that military administrators 'discharge their duties correctly,

8   lawfully, and in good faith.'  *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979).

9   … if the record as a whole 'clearly precludes the Board's decision from being justified by a fair

10  estimate of the worth of the testimony of the witnesses or its informed judgment on matters

11  within its special competence,' we must set aside the Board's findings."  *American Diversified*

12  *Foods, Inc. v. NLRB,* 640 F.2d 893, 894 (7th Cir.1981) (citations omitted for brevity)."  *Swann v.*

13  *Garrett*, 811 F. Supp. 1336, 1339-1340 (N.D. Ind. 1992).

14       38.      Plaintiffs seek Federal Rules of Civil Procedure, Rule 56, Summary Judgment for

15  requested relief.  **There is no genuine dispute**.  Cited law and case law applied to this

16  demonstrate sufficient evidence for the requested Summary Judgment issuance of the Navy

17  Cross (NX) because denial is plainly arbitrary or capricious, clerical error(s), not supported by

18  substantial evidence, or contrary to law or regulation.  Naval records provided through official

19  channels including Freedom of Information Act filings prove the Navy Cross was initially

20  recommended and but for a series of errors, it would have been awarded with his peers.  Further

21  analysis shows he was not credited with the heroic acts of spotting and deterring an enemy

22  submarine from an imminent attack, thereby saving substantial lives and equipment.   And

1    Plaintiffs incurred substantial costs in fighting this injustice, directly attributable to Defendant.

2    ## FACTUAL HISTORY, NAVY ERRORS, AND ALLEGATIONS

3    39.    The relevant Naval decorations discussed herein, in current order of merit, are the

4    "Navy Cross," which is the 2nd most prestigious; the "Distinguished Flying Cross," which is the

5    8th most prestigious; and the "Air Medal," which is the 14th most prestigious.  There is a material

6    difference in these decorations.  Defendants vehemently guard these. If an award is not submitted

7    it generally cannot be bestowed.  Failure to submit an award recommendation is a material error

8    and outside of "*procedural regularity*."  Failure to bestow an earned and recommended award or

9    awarding a lower award by error or omission is "*procedural irregularity*" and a *material injury*.

10   40.    Navy Captain Edward Bergstrom served in the United States Navy at relevant

11   times as a pilot from January 1939 to July 1965, including combat in World War II.  (Exs. 2-3,

12   11-25)  A Lieutenant during the Aleutian campaign, later a Captain, he is now deceased.

13   41.    A Consolidated PBY-5A Catalina (hereafter "PBY") is essentially an amphibious

14   seaplane aircraft with flotation ability, able to land and take off from both the sea and land,

15   produced in the 1930s and 1940s.  It was a relatively slow and ungainly aircraft, designed mainly

16   as a patrol bomber and used for long range bombing attacks, supply delivery, reconnaissance and

17   rescue during World War II.  It was not designed as a fighter plane or a "dive bomber."  Due to

18   war efforts, the U.S. Navy forced these into emergency aerial combat fighter roles and as "dive

19   bombers" which pushed their design limitations and presented military tactical disadvantages.[2]

20   42.    From 1942 through 1946, and from 2003 through 2018, Defendants made

21   numerous well documented, systematic, arbitrary, capricious, and derelict plain errors and

---

[2] Plaintiffs request Judicial notice of these historical facts.

1   committed numerous willful acts of abuse of discretion in failing to identify and even denying

2   same after repeated reviews.  It <u>processed the wrong award</u>, <u>then arbitrarily downgraded it</u>, and

3   <u>failed duty to correctly identify and correct these errors when same have been repeatedly and</u>

4   <u>overwhelmingly proven with its own records</u> and in the interest of correcting the arbitrariness

5   and capriciousness of different awards for the same actions in the same circumstances.

6        43.     The key squadrons referenced herein were VP102, VP41, VP42, and VP43.

7        44.     On 7 December 1941, Japanese aircraft bombed Pearl Harbor, and the United

8   States declared war, propelling the U.S. into World War II.[3]

9        45.     From December 1941 through January 1942, LT Bergstrom engaged in individual

10  heroics for which he was never officially cited or recognized.  He was shot down in December

11  1941, and in January 1942 he saved his plane and crew from destruction by hastily flying it out

12  of the bay during a Japanese surprise attack which destroyed the other planes at rest.

13       46.     On or about 10 December 1941, for acts separate from his Navy Cross, in aerial

14  combat and bombing sorties, VP-102 Patrol Plane Pilot LT Bergstrom was shot down and forced

15  to land his damaged aircraft (with over 100 bullet holes) in Laguna De Bay, Philippines.  He

16  saved his crew and badly damaged PBY. *"There were 18 Zeros up after us that day…My plane*

17  *was jumped by three of them…. There was about 100 bullet holes in us but we managed to get to*

18  *a fresh water lake."* (Ex. 14)  Later, Japanese Zeros targeted and destroyed seven anchored

19  PBYs airplanes at rest on the water, eliminating this squadron as a fighting force in the

20  Philippines.[4] (Ex. 14)  With few remaining PBYs, the squadron moved south to escape the

---

[3]  Plaintiffs ask the Court to take Judicial Notice of this historical fact.
[4]  1942 Seattle Times newspaper article.

1  Japanese and reinforce the Dutch and Australian forces preparing for war.

2      47.    On 15 January 1942, unopposed Japanese aircraft strafed and bombed U.S. forces

3  at Ambon Island in the Dutch East Indies, caused at least one casualty and destroyed critical

4  supplies and equipment.  An excerpt from this historical account is detailed in the 1985 book,  *In*

5  *the Hands of Fate, The Story of Patrol Wing 10,* citing Navy Veteran Chay's diary entry, *"…*

6  *they bombed and strafed the hell out of us today and sank 3 PBYs.  One unhappy day.  No*

7  *fighters or anything to stop them."*  (Ex. 26)   During this attack (and unrelated to the underlying

8  actions for his Navy Cross recommendation), Patrol Plane Commander LT Bergstrom heard the

9  air raid siren and acted with initiative, without orders, to heroically fly his PBY and two crew

10  members to safety out of Ambon Bay.  Author Messimer wrote, *"…air raid alarm had caused*

11  *… veteran Edward Bergstrom to fly their plane to a scatter base thirty miles away.  He had taken*

12  *the two regular crewmen … with him… AAM2C Ted Schuler and RMRC Charles*

13  *Frasier[standing watch in the plane at the time] may have survived because of Bergstrom's*

14  *quick action… Fortunately… PBY 22-P-12 had been saved by Ed Bergstrom's quick action.*"

15  (Ex. 26)   Luckily some PBY's were absent, but unfortunately three PBYs at rest on the water

16  were destroyed by unopposed Japanese fighter planes.  The next day, they left Ambon in the four

17  surviving overloaded PBY aircraft, one which LT Bergstrom had saved from destruction.

18  Highlighting enemy abilities, by early 1942, many crew and pilots had been lost and most of the

19  original PBYs had been destroyed. (Ex. 26)

20      48.    Note that LT Bergstrom did not receive any decorations for these acts of bravery

21  and heroism, aerial fighting, quick thinking, or being shot down, for combat in the Dutch East

22  Indies and Philippine campaigns.   After the war, he received the generic Asiatic Pacific

1   Campaign Medal, the American Campaign Medal, and World War II Victory Medal.  When he

2   was ultimately recognized for these <u>campaigns</u> it was the Air Medal decoration with a Gold Star,

3   due to the number of missions flown.  In 2006, he was posthumously awarded the Bronze Star

4   decoration for "Meritorious Service from 7 December 1941 through 9 April 1942" after his son

5   Robert, Plaintiff, filed a FOIA request for any retroactive award documents approved by the

6   awards branch.  Demonstrating the <u>first of many errors</u>, <u>the Navy did not know it had approved</u>

7   <u>the Bronze Star years earlier until his son requested the award for his father</u>, awarded in 2006.[5]

8   (Ex. 17)  However, LT Bergstrom was never issued a separate citation or decoration for his

9   Ambon or Philippines heroics and important life saving acts above and beyond the call of duty.

10          49.      Between 3-10 June 1942, Japan had spread control throughout the Pacific Ocean,

11   and seized U.S. territory in the Aleutians, including Kiska and Attu islands sandwiched between

12   the northern Pacific Ocean and Bering Sea some 1,200 miles west of the Alaska mainland.  The

13   Aleutians were strategically critical.  Japanese strategy included control of the Pacific Ocean,

14   disrupting American resupply, diverting resources from the Midway campaign, and damaging

15   U.S. morale. Japan held this territory until mid-1943.  Fighting in the Aleutians was important

16   and dangerous;[6] on 4 June 1942 aerial fighting claimed approximately 11 Japanese aircraft and

17   10 U.S. aircraft and significant casualties (simultaneous to the Battle of Midway 4-7 June 1942).[7]

18          50.      Events in June 1942 establish the basis for original his Navy Cross decoration

19   with additional citation or perhaps additional award recognition.  While significant Naval

---

[5]  Capt. Bergstrom's DD-215 showing Bronze Star Medal awarded posthumously from 29 September 2006.
[6]  Plaintiffs ask the Court to take Judicial Notice of these widely reported historical facts.
[7]  Historical facts gleaned from various open sources, including the History Channel and Wikipedia.

1    resources were diverted elsewhere,[8] the Navy conducted reconnaissance and bombing runs

2    against Aleutians Japanese forces.  Navy combat pilot LT Bergstrom was a Patrol Plane Pilot

3    Commander during the Aleutian Islands campaign.  From 1941 through 1942 he flew a PBY

4    seaplane ill prepared for aerial combat and outmatched by faster and highly maneuverable

5    Japanese Zero fighter planes.[9]  He commanded two difficult advanced base units of squadron

6    VP-42 during these combat sorties. (Ex. 3)  Lieutenant Bergstrom and his Squadron conducted

7    dangerous aerial patrols, torpedo and bombing sorties against heavily fortified and defended

8    Japanese targets in Kiska Harbor and the Japanese invasion fleet in order to cripple Japanese

9    military ships, planes, and coastline defenses.  These missions were extremely dangerous with

10   limited visibility at night or under concealment of fog.  They fought extremely dangerous

11   Japanese defenses while also battling the unpredictable severe weather (freezing rain, high

12   winds, snow/ice, fog/clouds, etc.) which obscured dangerous volcanic island mountainous

13   terrain.  The hypothermic frigid Sea meant a water crash was likely not survivable.  They also

14   fought combat fatigue.  This combination claimed many aircraft and crew.  (Exs. 2-16, 26-30)

15           51.     The Navy aggressively attacked the Japanese on Kiska Island, fighting the enemy

16   and weather.  The situation was desperate and stakes were high, as demonstrated by declassified

17   messages which reference heroics fighting against the "hellish" weather and superior aircraft.

18   (Ex. 27)  On 11 June 1942, B-24 and B-17 bombers tried bombing, but the attacks were

19   unsuccessful.  The Japanese were ready, destroying or damaging and repelling the B-24s and B-

---

[8]  Battle of Midway was occurring from 4-7 June 1942.  Plaintiffs seek Judicial notice of this fact.
[9]  Japanese Zero fighter planes were considered a "top 10" fighter plane of WWII, along with German, U.S., and Russian fighter planes.  Its aerial combat abilities far outmatched the PBY seaplane.

1   17s.[10] (Ex. 29)   Navy Commander Gehres ordered <u>all PBYs to bomb the Japanese there until</u>

2   <u>they ran the Japanese out of Kiska or ran out of bombs and fuel</u>.[11]   The Japanese repelled these

3   attacks, killing crewmen and damaging PBYs with accurate anti-aircraft fire, "*The results of the*

4   *raid were hardly worth the cost.*"   (Ex. 29)   War Diary, ship Deck Logs, and Flight Log Diary

5   entries prove all PBYs were armed and given orders to bomb Kiska.   Defendant's corroborating

6   documents prove that from 11-13 June, LT Bergstrom (call sign 22V3) bombed targets at Kiska.

7   On 12 June he and two other planes dropped 12 bombs at enemy ships in Kiska, and he dropped

8   4 bombs at moored ships on 12 June.   His personal log book reflects 3 continuous days of

9   "bombing missions" between Dutch Harbor, Kiska, Umak, Atka, and Cold Bay, logging 21.8

10  hours flying many hundreds of dangerous miles over contested territory and frigid isolated ocean

11  waters.[12]   His bombing flights ended nearly two weeks' continuous reconnaissance missions

12  looking for the Japanese fleet.   He and the rest of VP-41 and VP-42 crews were at the limits of

13  their physical endurance when they bombed Kiska Harbor.   He also provided important combat

14  knowledge previously gained from his Philippines and Dutch East Indies actions to the other

15  pilots, giving training which saved pilot LT Campbell (NX recipient) and crew on 4 June when

16  attacked by Japanese Zeros.[13]   (Ex. 13)   In total these actions were clearly heroic and worthy of

17  the Navy Cross for which he earned and was recommended (with his peers who were awarded

18  the Navy Cross, who did not suffer clerical errors in awards processing).

19          52.     Pilots and peers LT Bill Thies (VP-41) and LT Bergstrom (VP-42) commenced

---

[10]  "*PBY The Catalina Flying Boat*" by Roscoe Creed, 1985, pg. 129
[11]  "*The Thousand-Mile War: WWII in Alaska and the Aluetians*" Brian Garfield, 1995, pg. 112.
[12]  Distances between Dutch Harbor and Kiska is 678 miles.
[13]  Seattle Times newspaper from Nov. 1942 and L.A. Times newspaper from 1942.

1   PBY attacks on Kiska Harbor nearly simultaneously on the same date, conducting similar

2   missions[14] and both were recommended for the Navy Cross.  Lieutenant Thies was awarded and

3   received the Navy Cross.  (Ex. 8)  Plainly due to clerical errors LT Bergstrom did not receive the

4   Navy Cross.  (Exs. 2-3, 9-10)   A newspaper article noted his squadron commander at the time

5   was CDR James Russell (later promoted to Admiral), who noted in LT Bergstrom's 1942 fitness

6   report that he was recommended for the Navy Cross.  (Exs. 2, 3)

7           53.     The Japanese were ready, since the bombing had started on 11 June with both

8   PBY's and Army Air Force B-24's (one B-24 was shot down on 11 June and two others were

9   severely damaged). (Ex. 29)  According to the Wing War Diary at least two PBY's attacking

10  Kiska Harbor were destroyed due to battle damage and had, "*many bullet and shrapnel holes in*

11  *tail and wings of remaining planes participating."*  The PBY bombing missions ended on 14

12  June after the seaplane tender *USS Gillis* spent all fuel and bombs and the surviving crews were

13  too exhausted to continue.   It was a miracle that LT Bergstrom's plane survived his combat

14  sorties, since there were so many lost planes and casualties in June.  (Exs. 11-13, 30)

15          54.     All surviving crews were at the limits of their endurance when the Aleutian

16  bombing missions were flown.  A September 1942  L.A. Times news article details the Wing's

17  actions in the Aleutian Islands and elsewhere, stating, *"There was Bergstrom, a quiet young man*

18  *who has seen action at Corregidor, who fought …up and down the Orient, and now is on duty in*

19  *the Aleutians to keep fighting them, even flying in a ship with 100 bullet holes, as he did in the*

20  *Philippines…fought in the Philippines, and down southward until he was at Java, and now up*

21  *north since he is in the Aleutian Islands….*  (Ex. 14)

---

[14]  Logs from the *USS Gillis*. (Ex 30)

1      55.     Video evidence of PBY and B24 attacks over Kiska from 10-14 June 1942 and a

2   historical explanation of this conflict can be viewed on open-source internet YouTube videos:

3              A.      https://www.youtube.com/watch?v=dD8Z_nCQcV0

4              A 2-minute documentary showing PBY combat over Kiska 10-14 June 1942.

5              B.      https://www.youtube.com/watch?v=mkvqM6RvJW4

6              From 26:00 – 28:00 documentary of the thick flak, anti-aircraft and defenses of the

7              Japanese over Kiska, citing many Patrol Wing Four planes were lost.

8              C.      https://youtu.be/Emz2Ae9R6bQ

9              A 12-minute documentary of this conflict with historical videos.  This video

10             specifically references the weather-related challenges and significant positive

11             impacts of the Naval support and bombardments aiding ground troops.

12     56.     During June 1942, the requirements for a Navy Cross were, ***"extraordinary***

13   ***heroism or distinguished service in the line of his profession."***  **His Wing Commander**

14   **recommended the Navy Cross (under P15 Serial 0266), but due to a plain clerical error,**

15   **that recommendation was never correctly processed to the awards branch like all the rest**

16   **of VP-42 Navy Cross recommendation letters.  Instead, the Wing Secretary erroneously**

17   **placed LT Bergstrom's name on the list for the Distinguished Flying Cross in stark**

18   **contrast and violation of the Wing Commander's contemporaneous intent** that he be

19   awarded a Navy Cross (under CINPAC Serial 23).  (This error went undiscovered in 1942, 1943,

20   1946, and was not discovered until 2001, and even then, it was not properly considered during

21   numerous 2003-2018 review Boards.)  (Ex. 1-8)  The 19 July 1942 plainly written

1  recommendation by Captain L.E. Gehres (Commander, Patrol Wing Four and best suited to

2  evaluate) recommended LT Bergstrom for the Navy Cross, as follows:  (Ex. 2)

3  **NAVY CROSS RECOMMENDATION for Lieutenant Edward W. Bergstrom**

4  United States Pacific Fleet, Aircraft Scouting Force, P15 Serial 0266, 19 July 1942

5  From: Commander Patrol Wing Four

6  To: President, Board of Awards, Pacific Fleet

7  <u>Recommendations for awards for conduct during the Aleutian Islands Campaign.</u>

8  "During the Aleutian Islands Campaign, Lieutenant (Junior Grade) Edward W.

9  Bergstrom A-V(N), USNR, as a patrol plane commander, accepted extremely dangerous

10  weather conditions consisting of high winds, snow, rain, fog and icing, without question.

11  His assigned tactical missions were eagerly carried out during enemy air raids of Dutch

12  Harbor and Fort Glenn in the face of enemy air opposition.  He participated in all-night

13  aerial patrols and bombing missions on enemy ships in Kiska Harbor against heavy

14  enemy air and anti-aircraft opposition.  Lieutenant Bergstrom's eagerness to accept

15  enemy opposition during extremely dangerous weather marks his flights as outstanding

16  and extraordinary.  He performed many missions each of which, considered separately,

17  would be worthy of an award.  Reference is made to the following commendatory

18  messages: Commander-in-Chief, United States Navy dispatch 081245; Commander-in-

19  Chief, United States Pacific Fleet dispatch 072145; Commander-in-Chief, United States

20  Pacific Fleet dispatch 132105; Commander North Pacific Force, United States Pacific

21  Fleet dispatch 051559; and Commanding General, Alaska Defense Command dispatch

110145, all of June, 1942.   As a result of the above actions, **it is recommended that a Navy Cross be awarded Lieutenant Edward W. Bergstrom,** A-V(N), USNR, Patrol Wing FOUR, with the following CITATION:

*"For extraordinary heroism and distinguished conduct in the line of his profession and in the face of the enemy.  During the enemy bombing of Dutch Harbor Umnak and thereafter Lieutenant Bergstrom, as a patrol plane commander, eagerly accepted extremely hazardous scouting missions and participated in all-night aerial bombing attacks on enemy ships in Kiska Harbor against concentrated air and anti-aircraft opposition."*  L.E. Gehres (Commander)

57.     The intended award recommendation clearly satisfied the requirements in spite of failing to reference major Aleutian heroics such as his attack against a Japanese submarine which prevented an attack on *USS U.S. Grant*.  His award should have expressly include this, but it nevertheless satisfied the Navy Cross requirements.  This sub attack is important because while LT Bergstrom was never credited with this, two of his peers (Davis and Thies) attacked Japanese vessels and it was part of their Navy Cross citation and award.  (Exs. 1-2, 6, 8, 11-12)

58.     On 17 June 1942,  LT Bergstrom attacked a Japanese submarine and deterred an attack on the *USS U.S. Grant,* which saved hundreds of lives and a critical U.S. Navy vessel and supplies in Cold Bay during the Aleutian campaign.  But he was never officially recognized for this act nor was it referenced in his NX citation.  Plaintiffs seek the inclusion of this heroic act in amended narrative of his Navy Cross award or a separate NX or commensurate award for this.

59.     During WWII, hundreds of ships were lost to the relentless extremely dangerous

1    threat of enemy submarines firing torpedoes, famously sinking the *USS Indianapolis* in 1945,

2    killing nearly 900 Sailors.  Civilian and naval ships sunk by torpedoes in WWII show staggering

3    human losses and ships, losses often between half or most passengers.  By way of a non-military

4    analogy, the 1912 Titanic disaster shows the human cost of a vessel sinking in frigid waters,

5    which claimed estimated 68% of those aboard following an iceberg strike.[15]

6         60.    Cherni Island and Senak Island are in close proximity (~10 miles) near Cold Bay

7    and Sand Point, Alaska.  Defendant's weather reports show the average June water temperature

8    in Cold Bay at Sand Point is nearly freezing, 45 degrees.[16] (Ex. 28)

9         61.    Three independently corroborating contemporaneous documents provide direct

10   and circumstantial proof that LT Bergstrom provided patrols and escorts in Cold Bay on 16-17

11   June, attacked a Japanese submarine, and averted the attack, sinking, and loss of the *USS U.S.*

12   *Grant* and probably many hundreds of lives aboard.

13        62.    In 1942, the *USS U.S. Grant* was a Naval troop transport, supply, and

14   communications ship operating in the Aleutian Islands, ferrying up to 1,200 passengers and

15   mission essential cargo in the frigid Pacific ocean.[17]  National Archives and Records (NARA)

16   provided Exhibit 11, the 17 June 1942 excerpt from the *USS U.S. Grant* deck log.  It states,

17   "***Observed escorting Navy patrol plane #2 drop depth charge*** *near Cherni Island, about 10*

18   *miles from ship…* ***patrol plane reported dropping dept charge on enemy submarine***." (Ex. 11)

19   This corroborates two other independent contemporaneous documents.

20        63.    LT Bergstrom's 16 June War Diary log entry shows 9.4 hours patrol in Cold Bay.

---

[15]  Plaintiffs ask the Court to take Judicial Notice of general high human fatality rates from sunk oceanic vessels.
[16]  Official National and Ocean records found at https://www.nodc.noaa.gov/dsdt/cwtg/alaska.html
[17]  Plaintiffs seek judicial notice for this public historic fact.

1    While no entry on the 17th, this patrol likely extended overnight into the 17th.  (Ex. 12)  "Night

2    patrols" are referenced in the Patrol Wing Four War Diary on 16 and 17 June.  (Ex. 13)

3          64.     Patrol Wing Four log for 17 June corroborates and credits LT Bergstrom with the

4    attack on the submarine, *"This unit provided a two plane anti-submarine patrol for USS U.S.*

5    *Grant, sailing from Cold Bay…One plane (**LT Bergstrom**) **sighted periscope** off Senak Island.*

6    *An immediate **attack was made dropping one depth bomb**.  No damage to the submarine was*

7    *apparent, but **an attack on the Grant was probably averted**."*[18] (Ex. 11-13)

8          65.     If the *USS U.S. Grant* suffered torpedo attack, explosions, and sank in the

9    contested, isolated, frigid, and choppy sea waters, fatalities would likely be 100% given the

10   violence of attack and location.  Submerged passengers would likely suffer hypothermia or

11   drown. No meaningful or prompt rescue effort seems practical.[19]  Corroborating known 45

12   degree water temperatures with three other records prove LT Bergstrom attacked and deterred a

13   Japanese submarine hunting the *USS U.S. Grant* in Cold Bay on 17 June 1942, preventing the

14   vessel from being sunk and staggering loss of lives in circumstances making survival unlikely.

15   (Exs. 2, 11-13, 28)   Plaintiff is unaware of any other pilot receiving credit for this heroic act.

16         66.     For his actions in saving hundreds of lives and a Navy ship carrying essential

17   supplies, at minimum LT Bergstrom should receive his originally recommended Navy Cross

18   with amended citation to include this heroic act.  Alternately, he should receive his original Navy

19   Cross, based on that criteria, and a separate meritorious Navy Cross decoration consistent with

20   the June 1942 criteria ***"extraordinary heroism or distinguished service in the line of his***

---

[18]  Emphasis added.  Highlighting in document photocopy partly obscures names but LT Bergstrom is legible.
[19]  Plaintiff asks the Court to take Judicial Notice of the biological effects of hypothermia.

1    ***profession"*** for saving *USS U.S. Grant* and all lives from a probable attack and sinking.

2         67.    Even without the reference to the defense of the *USS U.S. Grant,* LT Bergstrom's

3    Navy Cross recommendation met the criteria and was similar to his peers, Navy Cross Recipients

4    from the same campaign time period conducting the same or similar missions.  (Ex. 2-7)

5         A.    LT CMDR C.B. Jones (VP-43):  Received **two decorations**, the Navy

6         Cross and the Distinguished Flying Cross, for nearly identical actions in the same

7         campaign as LT Bergstrom. (Exs. 6-7)

8         B.    LT CMDR C.E. Perkins (VP-42):   (Ex. 4)  [Later in 1943 Perkins was

9         Bergstrom's commander and saw injustice error of Bergstrom's Air Medal, and

10        sought to correct it by requesting a higher award DFC.  Further explanation

11        follows herein.  (Ex. 15)]

12        C.    LT Campbell (VP-42):  Noted to have materially benefited from more

13        experienced LT Bergstrom's instructional training.  (Exs. 5, 14)

14        D.    Ensign W.T. Sorenson (VP-43).  (Ex. 6)

15        E.    Machinist Mate L.L. Davis (VP-43).  (Ex. 6)

16        F.    Ensign Thies (VP-41).  (Ex. 8)

17        G.    Some members were recommended for a NX yet downgraded to the DFC

18        while others were recommended and received the DFC.  <u>This appears arbitrary or</u>

19        <u>due to errors.  Mistakes were made, such as those later documented by CMDR</u>

20        <u>Perkins for three individuals.</u> (Ex. 15)  There is no clear understanding of what

21        arbitrary criteria was used in differentiation, except that some did not bomb Kiska

22        Harbor under the fog unlike <u>some (not all)</u> of those who were awarded the Navy

1    Cross did.  **However, reported bomb hits is not the legal award criteria and**

2    **therefore invalid reasons,** and well meaning but self-serving subjective

3    observations and judgments were improbable to verify given the chaotic missions

4    with heavy cloud cover or fog.  The historical veracity of those hits on Kiska

5    targets by Navy PBY aircraft are unknowable and not reflected in Japanese

6    records (except for one hit on a transport by an Army Air Corp mission).  **More**

7    **to the point, they are not legally award criteria**. (Ex. 1)  The best approach is to

8    award originally recommended awards if they are consistent with the criteria

9    absent material reasons to alter the award.

10    68.    In July 1942, the Cinpac Serial 23 award list was forwarded for processing to the

11    Awards Branch from Patrol Wing Four, listing recommended campaign awards.  Due to now-

12    obvious <u>administrative error</u>, LT Bergstrom's original recommended NX (#2 prestigious) was

13    <u>erroneously listed</u> as a DFC (#8 prestigious), a <u>materially lesser award</u>.  (Exs. 1-2, 9)  This

14    materially detrimental error violated his equal protections under the 14th Amendment by

15    disparately depriving him of an earned material decoration.  Not discovered during any prior

16    "review," this clerical mistake was first identified when heirs requested and reviewed records

17    circa 2000-2003.  The continued denial continues to violate his rights.

18    69.    On 7 August 1942 (U.S. invasion of Guadalcanal), and importantly after his

19    award recommendation, the Navy Cross qualification requirement was amended to

1   "*extraordinary heroism only.*"[20]  This change has no retroactive impact on pre-August 1942

2   awards, including LT Bergstrom's June 1942 recommendation.  Regardless his acts still qualify.

3          70.      On 5 November 1942, the Awards Branch compounded the prior material errors

4   of Serial 23 and <u>arbitrarily downgraded</u> LT Bergstrom's (wrongly) recommended DFC further to

5   the AM (#14 prestigious), <u>without explanation</u>.  (Exs. 9-10)  What should have been a Navy

6   Cross (NX), became an Air Medal through <u>plain errors and injustice</u>.  He earned a recommended

7   NX, the 2nd prestigious award.  The initial **procedurally irregular process errors** caused his 2nd

8   most prestigious award to become an 8th prestigious award.  Due to more **procedurally**

9   **irregular process errors** or arbitrary and capricious reasons, his 8th prestigious award was

10  reduced to the 14th prestigious.  This was <u>materially beneath what he earned, his peers, even his</u>

11  <u>subordinate co-pilot.</u>  This injustice violated his 14th Amendment equal protections rights.

12         71.      More evidence of the Navy Cross recommendation appeared on LT Bergstrom's

13  20 November 1942 fitness report completed by Commander James Russell (VP-42 CO), **which**

14  **listed the Navy Cross recommendation P15 Serial 0266** in section 9.  (Ex. 3)  It is **obvious**

15  **Commander Russell observed and knew of the heroism, knew of Captain Gehres' NX**

16  **recommendation, and mistakenly believed the Navy Cross was to be awarded**.

17         72.      In early 1943, his new Commander Perkins (the Navy Cross recipient who flew in

18  VP-42 on similar Aleutian campaign missions as LT Bergstrom) saw that LT Bergstrom (and

19  two others, LT Dickey and ENS Bingham) had only received the Air Medal.  He wrote his

20  commanders to <u>correct the injustice</u> and <u>cited errors</u> were made, *"…[these three] officers were*

21  ***inadvertently omitted from the recommendations*** *forwarded for this squadron, probably due to*

---

[20] Plaintiff's request judicial notice of these public facts.

*the enormous clerical work* load at that time...**subsequent recommendations apparently**

**received different treatment** ... *which resulted in the embarrassing circumstances [herein].*"

(emphasis added) (Ex. 14)  This is evidence of **broader systemic procedural irregularities**

with three officers having incorrect combat awards processed or downgraded.  It is unclear the

extent of his knowledge of the larger errors, but he did not reference LT Bergstrom's NX

recommendation or actions listed in support.  It appears he viewed the error as a DFC that was

erroneously downgraded or forwarded as an AM, rather than the correct NX recommendation

resulting as an AM. His well intended attempt to fix the injustice did not uncover the deeper

extent of the errors.  CMDR Perkins tried to correct the injustice as he perceived it and requested

LT Bergstrom and two others be awarded the DFC.  LT Bergstrom suffered multiple levels of

compounded errors creating material injustice, despite the DFC award which was significantly

less than his NX, which most of his peers received for lack of errors.

73.     Per CMDR Perkin's request letter, in early 1943, the Awards Branch compounded

the errors by failing to correctly identify and fix them.  LT Bergstrom's AM (#14 prestigious)

was reviewed and upgraded to the DFC, (#8 prestigious).  **This repeated and compounded the**

**previous undiscovered Cinpac Serial 23 administrative errors which failed to discover the**

**original NX, (#2 prestigious) recommendation letter**.  (Exs. 2, 3, 9, 15, 16)

## ADMIRAL HORNE BOARD AND
## FURTHER AWARDS BRANCH ERRORS

74.     After WWII, the Navy created the Admiral Horne Board ("Horne Board") to

review WWII era awards for thoroughness, consistency, and fairness.  In this case it failed.

1    75.    On 19 December 1946 a member (not the full Horne Board) reviewed LT

2 Bergstrom's Navy Cross recommendation letter located in his Fitness Report.  The clerical error,

3 a **plain undeniable procedural irregularity**, **which failed to submit the recommended NX**

4 **letter to the awards branch, was not identified, perpetuating the errors**.  In yet another **plain**

5 **procedural irregularity**, the member (wrongly) believed the NX recommendation was

6 downgraded to the DFC, rather than the actual case history of clerical errors of processing the

7 DFC, downgraded to an AM, then upgraded to a DFC.  The Board member <u>perpetuated the</u>

8 <u>errors and recommended to the Awards Branch no change</u> for the DFC.  (Exs. 2-3, 9-10, 15-17)

9 This member wrongly viewed this as an "*upgrade*" versus correcting the original errors.

10    76.    The Horne Board materially failed.  It saw the correct original P15 Serial 0266

11 NX recommendation (in LT Bergstrom's fitness report) but failed to recognize this had not been

12 properly submitted or reviewed in 1942 by the Awards Branch, which did not have it.  Viewing

13 it as an AM awarded as a downgrade from a (wrongly) recommended DFC award based upon the

14 erroneous Cinpac Serial 23 DFC submission, this Board member wrongly believed the AM was

15 awarded as a downgrade based upon the original recommended NX, which it was not because

16 that <u>original NX recommendation was not the basis for the later awards</u>.  The Board member

17 failed to recognize <u>the Awards Branch never reviewed the original P15 Serial 0266 NX</u>

18 recommendation (instead basing their award on the mistaken Cinpac Serial 23 DFC

19 recommendation), later only upgrading (the mistaken AM) to the DFC solely on CMDR Perkins'

20 1943 request for an AM upgrade to the DFC.  The base understanding was incorrect, which

21 perpetuated the incorrect belief and action that the DFC was the correct award when in fact it

22 was not.  Seeing that it had later been "*upgraded*" to the DFC in 1943, no further "*upgrade*"

1    action was deemed necessary.  This was an incorrect conclusion based on incorrect information

2    and analysis.  Because of the mistaken belief that the Award Branch had reviewed and did not

3    award the NX in 1942, the Horne Board mistakenly did not recommend the NX be awarded,

4    thereby repeating and entrenching this error that the Navy now refuses to correct. The Board

5    member wrongly concluded, "*The Board has reviewed the case and recommends no change be*

6    *made in the award for services set forth in the basic correspondence*."  (Ex. 2-3, 9, 17)

7           77.     The original NX recommendation was legally correct and consistent with his

8    peers, and honored absent errors or arbitrary injustice.  If the Horne Board member had realized

9    the prior Awards Branch never received the original correct NX recommendation (but the DFC

10   by mistake), we presume the Horne Board member would have deferred to the original NX

11   recommendation, consistent with LT Bergstrom's Commander's intent and his peers.  It is more

12   likely than not he would have received it because his actions matched his peers who did receive

13   the Navy Cross, and to deny him of it at the time would have been arbitrary and capricious.

14          78.     The Horne Board materially failed, was not fair nor thorough, and demonstrated

15   lack of curiosity why LT Bergstrom received far lesser recommendation and award than his

16   peers or copilot, or any investigation into events.  It also failed to identify or credit the attack on

17   the Japanese submarine which likely averted the sinking of the *USS U.S. Grant* clearly

18   documented in the War Diary entry and *USS U.S. Grant* Deck Log, which alone was worthy of

19   significant recognition.  The Member made no mention of this, nor of LT Bergstrom's aerial

20   combat with Japanese seaplane fighters nor that he commanded two difficult advanced seaplane

21   bases during the Aleutians Islands campaign NX award timeframe.  (Exs. 2, 3, 10-15, 30)

79.     The 1946 Horne Board member offered no useful feedback or deliberation evidence, referencing the P15 Serial 0266 letter, which would have been useful to detect this compounding error at the time, but instead simply recommended no changes to Awards Branch. The lack of internal clear communication continued to compound the errors.

80.     Compounding the Horne review errors, plain "*procedural irregularities*," the Awards Branch committed further "*procedural irregularities*" when, after receiving the decision letter for no award change, it failed to notice that the NX recommendation letter P15 Serial 0266 was not in LT Bergstrom's official file. Only CINPAC Serial 23 was present in his file. This is their duty, yet Awards Branch carelessness and lack of attention to detail failed to discover this obvious *"procedural irregularity"* error.

81.     As well-intended as it was, the 1946 Horne Board and Awards Branch failed to detect significant multi-faceted errors and injustice in LT Bergstrom's case. It is impossible for any review that relies on the these flawed 1942-43 or 1946 reviews to be correct. They made material mistakes and compounded material mistakes, failed to uncover crucial information, lacked thorough review, and otherwise negatively and materially denied LT Bergstrom his earned and recommended Navy Cross. The continued denial of these plain **"*procedural irregularities*"** must be rejected.

82.     Absent complicated errors, if it had only been mistakenly downgraded from the NX to DFC, efforts would have more easily and succinctly identified and corrected a singular error to restore his NX. Instead, due to misfiled paperwork and erroneous understandings leading to material downgrades, followed by a erroneous inadequate upgrade, reviews indicate *"upgrade"* showing misunderstanding and prejudice against granting an *"upgrade"* believing it

1   has "***already been upgraded***," or seemingly disinterested in gifting an NX believed never earned

2   or recommended.  It has been a far more complicated task given multiple errors.

3   **EXHAUSTION OF ADMINISTRATIVE REMEDIES:**
4   **NOT AN "*UPGRADE*" REQUEST**
5
6   83.   For nearly two decades since 2003, Plaintiff sought relief to no avail through

7   various Naval Boards and Congressmen, receiving a "*final action*" denial letter in 2018.

8   84.   Between 2000-2006 Plaintiffs ordered and received Capt. Bergstrom's official

9   Naval records through the Freedom of Information Act, noted substantial evidence supporting

10   the enclosed claims resulting in injustice, and repeatedly since 2003 filed with military and

11   Congressional entities to correct the record. The procedural history was plainly explained but for

12   unsatisfactory reasons, the Navy continues to stonewall or deny with bizarre responses.

13   85.   Defendant has denied relief, taken an entrenched position, prejudices against what

14   it perceives as protecting the award process (ironically it is undermining that very integrity),

15   refused to take this matter seriously, repeated the same errors, and demonstrated extreme and

16   egregious incompetence or dishonesty in its alleged "reviews" and inadequate responses.  In

17   spite of plain objective Naval documentary evidence, the Navy has incorrectly repeatedly

18   asserted **that no material errors or injustice occurred and there was "*procedural regularity*."**

19   Plaintiffs have clarified expressly repeatedly this is **NOT an "*upgrade*" but seeking the**

20   **original NX award as recommended but not processed due to errors.**  Yet the Navy

21   continued responding with "*upgrade*" denials, ignoring all objective evidence otherwise, failed

22   to address the clear arguments, and obfuscate the issues in unimpressive responses.  (Exs. 19-25)

86.     On 1 February 2003, Plaintiff wrote the Navy seeking review, a 6-page document titled "Navy Cross Recommendation Review Request."  Excerpts state, *"… I am now respectfully requesting the Department of the Navy review his record to determine if he is eligible for the Navy Cross… evidence suggests* **the awards branch did not review his Navy Cross recommendation… inadvertently omitted** *… [when] he was awarded an Air Medal… He deserves to be awarded the* **Navy Cross as recommended by his commanding officer***, Captain Gehres… Based on the facts presented, and the fact that his* **Navy Cross recommendation was never reviewed, I am requesting the Navy review it now** *… and award the Navy Cross as recommended by his commanding officer*."  (Ex. 19)   For reasons inconsistent with his plain written request, the **Navy fixated on the semantics of an "*upgrade*"** versus simply making the correct recommended retroactive award, regardless of procedural mechanics.

87.     In April 2003, Navy Awards Branch Director Barbara Wilson discussed Plaintiff's request with him.  His well-researched articulate 6-page February 2003 letter repeatedly and thoroughly explained the errors in pursuit of a *de novo* review to award the original Navy Cross, which was never correctly processed.  In spite of Plaintiff's abundantly clear written request, and evidence, for unknown reasons Wilson's flawed understanding caused an unexplainable "*upgrade*" request.  That is incorrect, it was **not an "*upgrade*" request**.  An "*upgrade*" carries distasteful implications of asking for something *above that which was earned and recommended*.  This is a **request to restore the earned and recommended original award, deprived through carelessness, incompetence, and errors**. The obvious correct action is a restoration of the correct original recommended NX award, with his peers.  Wilson's incorrect understanding was relayed to Commander Loftus, causing a subsequent "*upgrade*" denial which

1   perpetuates and compounds errors.  Thereafter, every Navy Board or correspondence wrongly

2   prejudiced this as an "*upgrade"* resulting in denials, seemingly fixated and prejudiced by this.

3          88.      In July 2003, in a factually incorrect, inequitable, and legally unjust decision, the

4   Navy denied an "***upgrade***" award, stating, "*After carefully considering the request... **no upgrade***

5   *to the previously approved Distinguished Flying Cross is approved…. This case has been*

6   *reviewed on several occasions…. Distinguished Flying Cross was determined to be the*

7   *appropriate award for his actions when compared to similar actions."* (Ex. 20)  This was

8   incorrect in numerous ways.   Perpetuating the incorrect basis further demonstrates this case was

9   not carefully considered.  The DFC was not the appropriate award and only an upgrade from a

10  wrongly awarded AM which itself was based on material errors and injustice, as his peers

11  received their recommended NX.  This response made clear that key facts were not understood in

12  1942, 1943, 1946, and again in 2003-2004.  It also violated Plaintiff's 14th Amendment rights as

13  arbitrarily and disparately denying Plaintiff of the equivalent material decoration earned,

14  recommended to him, and awarded to his peers.

15         89.      Between 2003 and 2004, Plaintiff wrote the Chief of Naval Operations, and the

16  Secretary of the Navy, Washington Senator The Honorable Patty Murray, and Washington

17  Congressman Brian Baird, carefully and clearly explaining the underlying errors, seeking review

18  of the original Naval Cross recommendation for award.  Defendant materially misled them.

19         90.      In November 2004, in another shockingly factually incorrect response, the Navy

20  refused to grant relief, stating *"…it is not the case that errors were made during the review of*

21  *your father's Navy Cross recommendation."* (Ex. 20)  Plaintiff has proven that material errors

1    occurred, caused harm, and it is clear that the Navy again did not review the case history or

2    egregiously lied about repeated documented easily proven material errors.

3          91.    In December 2004, the Navy responded to an inquest by Washington Senator

4    Patty Murray, again demonstrating it did not understand the case, stating that it could not

5    "*upgrade*" the award.  The response explained the generic award process and equity but plainly

6    failed to grasp that the original Navy Cross recommendation was never correctly reviewed or

7    processed, nor address the many obvious errors and injustice listed herein.

8          92.    In August 2005, Congressman Brian Baird responded to Plaintiff, relaying that

9    the Navy denied Plaintiff's request for an "*upgrade*."  The Navy response parroted other

10   dishonest or inept responses and demonstrated continued failures to understand or address the

11   issues presented. Plaintiff clarified the errors with the Congressman's office, to no avail. (Ex. 22)

12         93.    Plaintiff sought relief in a May 2006 letter to the Secretary of Defense, to no

13   avail.   Therein in 2006 he did in-artfully use the term "*upgrade*" but clearly explained he was

14   seeking the award of the original recommended Navy Cross on behalf of his father, *"The Navy*

15   *Cross recommendation letter (Serial 0266) was never sent to the awards branch for review [due*

16   *to errors explained herein.]."*  No relief was granted.  (Ex. 21)

17         94.    Plaintiff wrote the Board of Correction of Naval Records (BCNR) in October

18   2009 and again in March 2010 seeking review of the mistakenly not processed Navy Cross

19   recommendation for retroactive award, as distinct from an "*upgrade*" request.  Plaintiff clearly

20   stated the case history, errors, injury, and relief sought.   The BCNR responded in June 2010,

21   denying relief, cited "***presumption of procedural regularity***," and stated, *"...**the Board found***

22   ***that the evidence submitted was insufficient to establish the existence of material error or***

1   *injustice."*  It also stated, "*You are entitled to have the Board reconsider its decision upon*

2   *submission of new and material evidence or other matters not previously considered by the*

3   *Board.  It is important to keep in mind that a presumption of regularity attaches to all official*

4   *records… the burden is on the applicant to demonstrate the existence of probable material error*

5   *or injustice*."   Again, in spite of repeated material plain errors cited, depriving Capt. Bergstrom

6   of his materially important recommended NX award, the Navy refused to admit repeated

7   material mistakes causing material harm, all documented in the Navy's own records.

8        95.   Plaintiffs sought relief in February 2010 with the Navy Department Board of

9   Decorations and Medals (NDBDM).   The NDBDM correctly stated that, "*Commanders at the*

10  *time were charged by the Secretary of Navy with determining what level of award was*

11  *appropriate to recognize deserving sailors and officers.  It is not the place of the NDBDM to*

12  *substitute current judgment for the Commanders at the time.*"  **Plaintiff agrees!  This is**

13  **precisely why Captain Bergstrom should be awarded the Navy Cross.   The original**

14  **recommendation of his Wing Commander Captain Gehres on 19 July 1942 was for the**

15  **Navy Cross** and absent the noted plain and obvious 1942-1943 errors, and subsequent errors, it

16  would have been awarded, based on his peers being recommended and receiving the Navy Cross.

17  No other individuals (then or now) are better equipped to judge his heroic conduct than his Wing

18  Commander Captain Gehres in July 1942 (and his CO reference in his Fitness Report for that

19  time period).  The **original 1942 recommendation is the correct decoration and should be**

20  **retroactively awarded Plaintiff**, and would have been absent the history of errors. (Ex. 23)

21        96.   Ironically the NDBDM inserted its 2010 judgment and showed demonstrable lack

22  of understanding of the underlying clerical and procedural errors to again wrongly deny relief to

1    "*upgrade*" to a Navy Cross.  Because it is not an "*upgrade*," referencing an "*upgrade*," was

2    again not Plaintiff's position, it is incorrect and unsupported by analysis and conclusion.  It

3    stated that it "*gave the case fresh review*" and that "*no material error or injustice was done…*"

4    and that, "*It is apparent from our review that a fully functioning awards system was in place…*

5    *some pilots received the Navy Cross while others received lower awards… in the absence of*

6    *such records, we must presume regularity*."  In this case, there was demonstrable material

7    irregularity so this analysis alone demonstrates the NDBDM failed to acknowledge or understand

8    that in spite of an alleged fully functioning system, there was human error that caused the

9    incorrect award submission, contrary to Commander Gehres' 1942 recommendation.  That

10   resulted in the wrong materially lesser award, which was wrongly and arbitrarily and

11   capriciously further downgraded, perpetuating this chain of errors, which began with a

12   documented objectively plain 1942 clerical mistake.  The original correct award was never

13   processed or reviewed.  **A proven material clerical error and series of recurring errors**

14   **resulting in material harm is the opposite of a "*fully functioning award system," or***

15   **"*procedural regularity***."**  The NDBDM failed to understand that Plaintiff was not seeking an

16   "*upgrade*," but the issuance of the **original 1942 Wing Commander's recommended award**,

17   whom the Navy in 2010 agreed was best suited to observe and recommend.

18          97.     The NDBDM also fixated on irrelevant and unverifiable language in various

19   award narrations referencing target "hits" in trying to differentiate awards.  This language was

20   irrelevant, having no bearing on the legal criteria for the award for heroism, and crediting "hits"

21   was unverifiable and often wrong at the time given the fog cover and inability to determine

1  "hits."  More importantly, Defendant should be informed that "hits" are not the legal express

2  basis for the Navy Cross award.   It is **extraordinary heroism or distinguished service**.  (Ex. 1)

3         98.     In June 2014, Plaintiff incurred fees and hired legal counsel to continue this

4  battle, and counsel wrote Washington's Senator Patty Murray.   That proved ineffective.  In

5  November 2015, fundamental errors plaguing this matter were again displayed in the Navy's

6  response to Senator Murray.  (Ex. 24)  Key phrases such as, *"Once an award recommendation*

7  *has been reviewed and an award issued by a competent awarding authority, it can only be*

8  *reconsidered upon submission of new, relevant material or evidence of an injustice in the*

9  *decision process…. thoroughly reviewed, it has been determined that the documentation*

10  *submitted does not substantiate that an error or injustice occurred…"* demonstrate inability or

11  unwillingness to acknowledge or understand underlying material errors and injustice objectively

12  proven through Navy documents including the original 1942 recommendation was which was

13  erroneously not processed, which caused material harm.  This was "*procedurally irregular*."

14        99.     Plaintiffs incurred legal fees in 2016-2017 when retaining new and current

15  counsel, The Law Firm of Ryan Sweet, to re-engage Defendant for relief.  In 2017 legal counsel

16  filed clear and concise case history and request for relief to the BCNR and NDBDM, naively

17  thinking Defendant would fix this clear erroneous injustice.  This request was supported by

18  ample, thorough, clear, and concise case history, argument, and request for relief, supported by

19  old and new material and relevant evidence and legal argument.   This resulted in similar canned

20  entrenched denials, citing "*procedural regularity" and "no material harm or injustice*."

21        100.    Counsel also wrote Washington Senator Patty Murray for assistance in 2017 and

22  Senator Murray's office wrote to the Navy in 2017.  This was equally fruitless.

1          101.    The Navy accepted the 2017 application, *"Because your application was*

2   *submitted with new and material evidence not previously considered, the BCNR found it in the*

3   *interest of justice to review your application."*  The Navy provided multiple baseless denials.

4          102.    In February 2018, the Navy issued an Advisory Opinion which recommended

5   denying relief, stating, *"We found **no indication of material error or injustice** …the petitioner*

6   *failed to present evidence to overcome **the presumption of regularity** …".*  (Ex. 25)

7          103.    In its October 2018 letter denying relief, the Navy again incorrectly referred to the

8   request as an "***upgrade***," but denied relief because it found "***no material error or injustice***."  It

9   also noted that the decision of the Board is final.  This letter began or restarted the Statute of

10  Limitations, pursuant to the "exhaustion rule."  (Ex. 25)

11         104.    Note that for over a decade the Defendants have been in possession of evidence

12  supporting not only the original Navy Cross, but evidence supporting his Bronze Star (already

13  awarded in 2006), and of additional significant meritorious acts in December 1941, January

14  1942, and July 1942, each worthy of separate awards which the Navy should *sua sponte* issue.

15         105.    From 2003 through 2018, various administrative steps were tried to no avail.

16  Congressional Representatives were unable to get relief and the Navy has repeatedly failed its

17  legal duty, lied, misled, stonewalled, and denied to acknowledge any errors occurred and has

18  proven that it will not grant relief.  The Navy's denials of <u>plain material procedural irregularities</u>

19  comes in spite of overwhelming evidence and in direct opposition to LT Bergstrom's then

20  Commander who recommended the Navy Cross, for which the Navy agreed was the best source

21  but refuses to award the Navy Cross award, which it wrongly repeats as an "*upgrade*" denial.

1      106.    Given the complexity of the errors, it bears succinct summary identifying repeated

2  compounding prejudicial and material errors.  <u>The Navy Cross was the legally and factually</u>

3  <u>correct original award, not processed in 1942 due to plain clerical error, causing an avalanche of</u>

4  <u>errors thereafter</u>.  These errors that follow reflect clear "***procedural irregularities***," a broken

5  award system ignoring or failing to identify errors, causing material harm and injustice.

6          A.      The first error was the 1942 failure to submit the NX recommendation per

7          Wing Commander clearly written intent and justified in accordance with the

8          decoration legal criteria expressly written in letter P15 Serial 0266 to the Awards

9          Branch for review and processing.  Instead, a DFC recommendation was

10         forwarded under Serial 23.  He earned the NX, it met the legal criteria, it was

11         properly recommended, his peers received it, there is no other justification for LT

12         Bergstrom to have been denied this.

13         B.      The second error was the arbitrary unexplained downgrade from the

14         mistakenly recommended DFC to the Air Medal on Serial 23.  These first two

15         errors greatly prejudiced later reviews and caused a litany of errors and injustice.

16         C.      The third error was Commander Perkins' 1943 well-meaning request for

17         an improvement from the Air Medal to the DFC.  Perkins correctly identified an

18         error was made but did not identify the correct nature of the error.  This

19         "*upgrade*" prejudiced future reviews as having already been "*upgraded*."

20         D.      The fourth error was Awards Branch 1943 failure to identify the historical

21         errors, when "*upgrading*" to the DFC (based on Perkins' upgrade request letter).

1           E.      The fifth series of errors was the 1946 Horne Board not identifying the

2           correct history, and recommending "no change." This review failed to identify the

3           Awards Branch had not seen the NX recommendation letter, along with all of the

4           other failures outlined herein, including the failure to recommend any recognition

5           for the *USS U.S. Grant* defense and submarine attack found in two records, and

6           other meritorious acts.  This proves it was not accurate, fair, or thorough.

7           F.      Thereafter a sixth set of errors under the Awards Branch 1946 failure to

8           identify the legacy errors and did not change the decoration, not realizing that the

9           NX recommendation letter referenced in the Horne Board denial was not even in

10          LT Bergstrom's Awards Branch file.  This proves it was not fair or thorough.

11          G.      Many errors were perpetuated at numerous Review Boards from 2003

12          onward in spite of plain explanation and evidence, explained herein.  Plaintiff  has

13          been unfairly put in a position to appear to seek "*upgrades*" for what should have

14          been originally granted absent plain errors, and in spite of repeated explanation

15          supported by Defendant's own documentary evidence. Defendants refuse to

16          correct this and offer no valid reason, offering unintelligible or dishonest

17          responses.  The original recommendation should be awarded.  Additional awards

18          should have been drafted and awarded when the Navy was expressly informed.

19     107.    Counsel remains puzzled how obvious repeated material errors contained in the

20  Navy's own records, denying a materially important recommended military decoration, can

21  result in such plainly unjust incorrect denials and entrenched positions of "***procedural***

22  ***regularity***."  How can any organization with so many material errors causing material harm

1    against one heroic member of the organization claim ***"procedural regularity?"***  Counsel is also

2    curious what could amount to actual irregularity if these legacy errors does not meet that

3    standard?  The Navy's adversarial entrenched response proves it refuses to acknowledge plain

4    Navy errors that resulted in an arbitrary and capricious act(s), and it will not understand plain

5    language that Plaintiff is not seeking an "*upgrade*" but the correct original award be granted as

6    written and intended by Commander Gehres in 1942, which was <u>never processed due to the very</u>

7    <u>errors</u> the Navy denies occurred or pretends is a normal functioning process and not irregular.

8    The facts and recommendation met the legal criteria for the NX, and <u>the Navy acknowledged in</u>

9    <u>2010 that the original 1942 recommendation was the most reliable.</u>  It was plainly denied only

10   through a series of errors, yet Defendant refuses to grant same and claims this is unjust

11   dysfunctional bipolar system is normal.  We believe this is evidence of abusive of power.

12          108.    Plaintiff has incurred more legal fees retaining the Law Firm of Ryan Sweet

13   (counsel has also now donated significant legal hours as pro bono work) to pursue this legal

14   action and right vast egregious miscarriage of justice harming a heroic WWII Navy combat pilot.

15          109.    Because the evidence demonstrates **<u>there is no real dispute</u>**, Plaintiffs request

16   Summary Judgment relief consistent with this Complaint, based upon LT Bergstrom's WWII

17   documented extraordinary heroism.  Summary Judgment is based on Defendant's records, and

18   public sources, and it is clearly apparent that the Navy Cross award was the express written

19   intent of his Wing Commander in 1942, and consistent with the law and his heroic actions and

20   the awards of his peers who conducted similar combat missions under the same circumstances

21   with similar results.  The Navy Board agreed in 2010 this is the most reliable person to make the

22   recommendation, yet refused to grant it.  There is no other reasonable explanation, but for the

1    totality of the many material errors and inequity in 1942, 1943, 1946, and 2003 through 2018, he

2    would receive the Navy Cross.  Navy representatives failed their duties, explained herein.

3    Justice requires it be awarded.  Justice also requires separate citations and awards commensurate

4    for the individual exceptional heroics in the Philippines in saving his aircraft and crew in

5    December 1941 and again at Ambon in January 1942, and saving the *USS U.S. Grant* in July

6    1942.  All legal expenses are directly due to Defendant's stubborn unreasonable breach of duty.

7    **SIMILAR CASES REVERSED DUE TO ERROR OR INJUSTICE**

8    110.    It is not without precedent for the military or Courts to review and correct

9    injustice where awards were not correctly processed or issued due to clerical errors or prejudices,

10    and retroactively make appropriate awards.  This cause of action is materially similar but

11    contains stronger evidence to that of the *Swann v. Garrett* case, cited herein.  Both Plaintiffs

12    served in the Navy in the Pacific ocean fighting the Japanese during World War II, both were

13    recommended the Navy Cross, both had their awards arbitrarily, unfairly, or erroneously

14    downgraded without cause, in both cases Plaintiff's peers received the Navy Cross for similar

15    actions, and in both cases due to systematic, arbitrary, and capricious Navy errors the NX

16    decorations were wrongly denied.  *Swann* ultimately prevailed and received his NX.  Plaintiff

17    Bergstrom has **stronger** direct evidence than *Swann*.  Whereas *Swann*  relied on circumstantial

18    evidence (a peer who was awarded the NX) and written affidavits supporting his NX award,

19    Plaintiff Bergstrom has contemporaneous corroborating direct evidence of his Commander's

20    original recommendation for the NX, and evidence that was wrongly denied through years of

21    documented direct evidence of Navy errors.  Plaintiffs have additional objective evidence

22    supporting his NX, including a reference to it on his 1942 fitness report, and peers who received

1    the NX.  And Plaintiffs presented additional evidence of meritorious actions for which he never

2    received official credit, including defending the *USS U.S. Grant* from attack. Plaintiffs cite

3    *Swann* and other cases to the Court, all overturned partly due to clerical or administrative errors:

4           A.      Alonzo Swann – Navy Cross WWII:  Clerical errors, prejudices.

5           B.      Robert Smith – Medal of Honor "Indian Wars":  Administrative errors.

6           C.      William Schneider – Silver Star WWII:  Misplaced award paperwork.

7           D.      John Caraberis – Silver Star WWII: Poor record keeping.

8    **DAMAGES**

9        111.    In this nearly two decade-long unnecessary dispute with the Defendants for which

10   the Navy is plainly in the wrong due to a series of plain material Naval errors, Plaintiffs have

11   retained at least two law firms and otherwise reached or exceeded $10,000 in legal and

12   processing fees, costs, and expenses and will have exceeded this figure by the conclusion of this

13   matter, which does not factor their personal time after seventeen years of frustrating denials, and

14   significant pro-bono work of current counsel to defray costs and fees in righting injustice.

15   Plaintiffs seek $10,000 pursuant to the Tucker Act and APA and this Court's authority.

16   **COUNT I**
17   **Administrative Procedure Act, 5 U.S. Code §702:  Correcting Records**
18   
19       112.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

20   contained in all paragraphs, citations, and exhibits of this Complaint.

21       113.    The Navy has legal duties for consistent fair awards and maintain correct records.

22       114.    The Navy has materially failed this duty.

23       115.    Defendant's repeated failures have caused material harm to Plaintiffs.

116.    Captain Bergstrom was a WWII United States Naval officer in 1942 at the time he earned and was recommended for a Navy Cross decoration pursuant to law and P15 Serial 0266.

117.    His Commander in 1942 had personal knowledge and made this recommendation.

118.    His recommended award was consistent with law and his heroic combat actions.

119.    The Navy in 2010 agreed that his then-Commander was best suited to evaluate and make the most accurate recommendation.

120.    But for obvious demonstrable and repeated clerical errors, Captain Bergstrom would have been awarded the Navy Cross with his peers.

121.    Plaintiffs seek Administrative Procedure Act, 5 U.S. Code §702, et. seq.,  specific performance, an order to Defendants to award the Navy Cross to Captain Bergstrom.

<u>**COUNT II**</u>
<u>**Administrative Procedure Act, 5 U.S. Code §702:  Correcting Records**</u>

122.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations contained in all paragraphs, citations, and exhibits of this Complaint.

123.    The Navy has legal duties for consistent fair awards and maintain correct records.

124.    The Navy has materially failed this duty.

125.    Defendant's repeated failures have caused material harm to Plaintiffs.

126.    Captain Bergstrom was a WWII United States Naval officer in 1942 at the time he earned and was recommended for a Navy Cross decoration pursuant to law and P15 Serial 0266.

127.    His recommended award was consistent with law and his heroic combat actions.

128.    Three independent contemporaneous Defendant records, combined with known water temperatures from Defendant, prove Captain Bergstrom defended Defendant's Naval ship

1  *USS U.S. Grant*, in Cold Bay on 17 June 1942, by attacking a Japanese submarine, stalking it.

2  Defending the *USS U.S. Grant* prevented its sinking and loss of significant lives and equipment.

3       129.    Captain Bergstrom was never officially credited with this heroic act.  It was not

4  referenced in his original 1942 Navy Cross recommendation.

5       130.    This heroic act is worthy of a separate appropriate retroactive Navy decoration

6  supported by written narrative and citation.

7       131.    Alternately, this heroic act should be reflected in Captain Bergstrom's amended

8  written Navy Cross recommendation for cumulative heroic actions in the Aleutian campaign.

9       132.    Plaintiffs seek Administrative Procedure Act, 5 U.S. Code §702, et. seq., specific

10  performance, directing Defendants to award a separate appropriate award with citation, or in the

11  alternative amend the original Navy Cross and award same to Captain Bergstrom.

12                    <u>**COUNT III**</u>
13    <u>**Administrative Procedure Act, 5 U.S. Code §702:  Correcting Records**</u>
14
15       133.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

16  contained in all paragraphs, citations, and exhibits of this Complaint.

17       134.    The Navy has legal duties for consistent fair awards and maintain correct records.

18       135.    The Navy has materially failed this duty.

19       136.    Defendant's repeated failures have caused material harm to Plaintiffs.

20       137.    Captain Bergstrom was a United States WWII Naval officer in December 1941.

21       138.    Independent contemporaneous records including public statements from Capt.

22  Bergstrom prove in December 1941 he engaged enemies in aerial combat, was shot down by

23  enemy aircraft causing significant damage, and saved his crew and equipment by successfully

1   evading and landing his badly damaged aircraft with 100 bullet holes.

2       139.    Captain Bergstrom was never officially credited with this heroic act.

3       140.    This heroic act is worthy of a separate appropriate retroactive Navy decoration

4   supported by written narrative and citation.

5       141.    Plaintiffs seek Administrative Procedure Act, 5 U.S. Code §702, et. seq., specific

6   performance directing Defendants to award Captain Bergstrom an appropriate award citation.

7
8       **COUNT IV**
        **Tucker Act, 28 U.S.C. §149: Correcting Records**
9
10      142.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

11  contained in all paragraphs, citations, and exhibits of this Complaint.

12      143.    The Navy has legal duties for consistent fair awards and maintain correct records.

13      144.    The Navy has materially failed this duty.

14      145.    Defendant's repeated failures have caused material harm to Plaintiffs.

15      146.    Captain Bergstrom was a United States WWII Naval officer in 1942 at the time he

16  earned and was recommended for a Navy Cross decoration pursuant to law and P15 Serial 0266.

17      147.    His recommended award was consistent with law and his heroic combat actions.

18      148.    His Commander in 1942 had personal knowledge and made this recommendation.

19      149.    The Navy in 2010 agreed that his then-Commander was best suited to evaluate

20  and make the most accurate recommendation.

21      150.    But for obvious demonstrable and repeated clerical errors, Captain Bergstrom

22  would have been awarded the Navy Cross with his peers.

23      151.    Plaintiffs seek specific performance pursuant to the Tucker Act, 28 U.S.C.

1  §1491(a), issuing or directing Defendants to award the Navy Cross to Captain Bergstrom.

2  **COUNT V**
3  **Tucker Act, 28 U.S.C. §149: Correcting Records**
4

5  152.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

6  contained in all paragraphs, citations, and exhibits of this Complaint.

7  153.    The Navy has legal duties for consistent fair awards and maintain correct records.

8  154.    The Navy has materially failed this duty.

9  155.    Defendant's repeated failures have caused material harm to Plaintiffs.

10  156.    Captain Bergstrom was a United States WWII Naval officer in 1942 at the time he

11  earned and was recommended for a Navy Cross decoration pursuant to law and P15 Serial 0266.

12  157.    His recommended award was consistent with law and his heroic combat actions.

13  158.    Three independent contemporaneous Defendant records, combined with known

14  water temperatures from Defendant, prove Captain Bergstrom defended Defendant's Naval ship

15  *USS U.S. Grant*, in Cold Bay on 17 June 1942, by attacking a Japanese submarine, stalking it.

16  Defending the *USS U.S. Grant* prevented its sinking and loss of significant lives and equipment.

17  159.    Captain Bergstrom was never officially credited with this heroic act.  It was not

18  referenced in his original 1942 Navy Cross recommendation.

19  160.    This heroic act is worthy of a separate appropriate retroactive Navy decoration

20  supported by written narrative and citation.

21  161.    In the alternative, this heroic act should be reflected in Captain Bergstrom's

22  amended written NX recommendation for cumulative heroic actions in the Aleutian campaign.

23  162.    Plaintiffs seek Tucker Act, 28 U.S.C. §1491(a) specific performance, directing

1  Defendants to award a separate appropriate award with citation, or in the alternative amend the

2  original Navy Cross and award to Captain Bergstrom.

3  **COUNT VI**
4  **Tucker Act, 28 U.S.C. §149: Correcting Records**
5
6  163.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

7  contained in all paragraphs, citations, and exhibits of this Complaint.

8  164.    The Navy has legal duties for consistent fair awards and maintain correct records.

9  165.    The Navy has materially failed this duty.

10  166.    Defendant's repeated failures have caused material harm to Plaintiffs.

11  167.    Captain Bergstrom was a United States WWII Naval officer in December 1941.

12  168.    Independent contemporaneous records including public statements from Capt.

13  Bergstrom prove in December 1941 he engaged the enemy in aerial combat, was shot down by

14  enemy aircraft causing significant damage, and saved his crew and equipment by successfully

15  evading and landing his damaged aircraft damaged by 100 bullet holes.

16  169.    Captain Bergstrom was never officially credited with this heroic act.

17  170.    This heroic act is worthy of a separate appropriate retroactive Navy decoration

18  supported by written narrative and citation.

19  171.    Plaintiffs seek Tucker Act, 28 U.S.C. §1491(a) specific performance, directing

20  Defendants to award Captain Bergstrom a separate appropriate award with citation.

21  **COUNT VII**
22  **Amendment 14, Equal Protections Violations**
23
24  172.    Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

25  contained in all paragraphs, citations, and exhibits of this Complaint.

173.   The Navy has legal duties for consistent fair awards and maintain correct records.

174.   The Navy has materially failed this duty.

175.   Defendant's repeated failures have caused material harm to Plaintiffs.

176.   Captain Bergstrom was a U.S. citizen and WWII Naval officer in 1942 when he earned and was recommended for a Navy Cross decoration pursuant to law and P15 Serial 0266.

177.   His Commander in 1942 had personal knowledge and made this recommendation.

178.   His recommended award was consistent with law and his heroic combat actions.

179.   The Navy in 2010 agreed that his then-Commander was best suited to evaluate and make the most accurate recommendation.

180.   Captain Bergstrom's peers who acted similarly under similar circumstances in the same timeframe and military campaign were recommended for and received the Navy Cross because they did not suffer clerical errors.  Denying Captain Bergstrom of his recommended Navy Cross without justification treats him disparately and illegally in violation of his rights.

181.   But for obvious demonstrable and repeated clerical errors, Captain Bergstrom would have been awarded the Navy Cross with his peers.

182.   In December 1941 Captain Bergstrom performed heroics, saving his plane and crew outlined herein, but never issued any official recognition nor commensurate award.

183.   In January 1942 Captain Bergstrom performed heroics, saving his plane and crew outlined herein, but never issued any official recognition nor commensurate award.

184.   In June 1942 Captain Bergstrom performed heroics, saving the *USS U.S. Grant* from attack outlined herein, but never issued any official recognition nor commensurate award.

185.   Plaintiffs seek specific performance pursuant to the equal protections rights

1   guaranteed under the 14th Amendment to the Bill of Rights in the U.S. Constitution, directing

2   Defendant to award Captain Bergstrom the Navy Cross and awards and citations commensurate

3   with his separate heroics in December 1941, January 1942, and June 1942.

**COUNT VIII**
**Tucker Act, 28 U.S.C. §149: Damages**

7   186.   Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

8   contained in all paragraphs, citations, and exhibits of this Complaint.

9   187.   The Navy has legal duties for consistent fair awards and maintain correct records.

10   188.   The Navy has materially failed this duty with plain and repeated obvious clerical

11   errors and omissions since 1941, and denied same.

12   189.   Defendant's repeated failures have caused material harm to Plaintiffs. Plaintiffs,

13   at great personal economic expense and consumption of time, have repeatedly and expressly

14   informed Defendant of plain errors resulting in material injustice harm.  This economic expense

15   includes retaining two law firms who repeatedly pursued relief to no avail over many years, and

16   associated not-insignificant costs and fees.

17   190.   Defendant has denied any material relief contrary to plain evidence, without

18   satisfactory or plausible justification.

19   191.   Plaintiffs seek damages to the statutory maximum, $10,000, pursuant to the

20   Tucker Act, 28 U.S.C. §1491(a) and this Court's authority, or as the Court deems just.

**COUNT IV**
**Administrative Procedure Act 5 U.S.C. §§552 et seq.: Damages**

24   192.   Plaintiffs re-allege and incorporate by reference all laws, facts, and allegations

25   contained in all paragraphs, citations, and exhibits of this Complaint.

1    193.    The Navy has legal duties for consistent fair awards and maintain correct records.

2    Defendant has a duty to provide accurate records pursuant to 5 U.S.C. §§552,  to wit, the correct

3    Navy Cross decoration award and allied DD215 records, to Plaintiff.

4    194.    The Navy has materially failed this duty with plain and repeated obvious clerical

5    errors and omissions since 1941, and denied same.

6    195.    Defendant's repeated failures have caused material harm to Plaintiffs. Plaintiffs,

7    at great personal economic expense and consumption of time, have repeatedly and expressly

8    informed Defendant of plain errors resulting in material injustice harm.  This economic expense

9    includes retaining two law firms who repeatedly pursued relief to no avail over many years, and

10   associated not-insignificant costs and fees.

11   196.    Defendant has denied any material relief contrary to plain evidence and without

12   justification.  In doing so, it has also failed its obligation to provide Plaintiff with accurate

13   government records, to wit the correct Navy Cross award and allied DD215 records, to Plaintiff.

14   197.    Plaintiffs seek damages to the statutory maximum, $10,000, pursuant to the APA

15   5 U.S.C. §§552 and this Court's authority or as this Court deems just.

16   **PRAYER FOR RELIEF**

17   Wherefore, Plaintiffs respectfully seek relief Summary Judgment as follows:

18   A.    Issue or direct Defendants to grant requested relief by posthumously awarding

19   World War II Navy Captain Edward Bergstrom the Navy Cross for actions consistent with his

20   then-Commander's original 1942 contemporaneous recommendation;

21   B.    A separate meritorious posthumous award to reflect the 17 June 1942 defense of

22   the *USS U.S. Grant* Naval vessel and lives saved, which was stalked by a Japanese submarine in

1    Cold Bay, and for which he has never received recognition.  Captain Bergstrom's heroic act is

2    worthy of separate significant award recognition;

3         C.     In the alternative, the award of the original Navy Cross with language amended to

4    reflect the 17 June 1942 defense of the *USS U.S. Grant* Naval vessel and lives saved, which was

5    stalked by a Japanese submarine in Cold Bay.  Captain Bergstrom's heroic act is worthy of

6    amended written citation in his original 1942 Navy Cross award and issuance of same;

7         D.     Order the issuance of individual recognition and appropriate award for

8    documented heroics in successfully saving his crew and craft when it was shot down in combat

9    on or about 10 December 1941;

10         E.     Order the issuance of individual recognition and appropriate award for

11    documented heroic actions on 15-16 January 1942 at Ambon Island in the Dutch East Indies;

12         F.     Direct the Navy to have an official customary award ceremony consistent with the

13    Navy Cross award and/or additional awards if issued;

14         G.     Direct the Navy to issue a corrected DD215 to reflect the award of the Navy

15    Cross, along with any other pertinent military record changes;

16         H.     Compensatory damages representing legal costs and fees totaling $10,000; and

17         I.     Liquidated damages as allowed and as the Court deems just and proper;

18         J.     The grant of any other consistent relief as this Court deems just and proper.

19

20

21

22

1           Respectfully submitted,

2           By: s/Ryan Sweet

3

4           Ryan Sweet

5           Plaintiff Counsel

6           PO Box 4784

7           Spanaway, WA 98387

8           253-642-7447

9           Rsweetlaw@gmail.com

10          Washington Bar #48863

11

12 Exhibits:

13   1.     Navy Cross Criteria, 65th Congress, Sess. III, 1919.

14   2.     July 1942 original Capt. Gehres Navy Cross Recommendation P15 Ser 0266.

15   3.     Nov. 1942 Report citing P15 Ser 0266 NX recommended by Commander Russell.

16   4.     Navy Cross Award – Perkins (peer, same era, similar missions as Bergstrom).

17   5.     Navy Cross Award – Campbell (peer, same era, similar missions as Bergstrom)..

18   6.     Navy Cross Awards – Sorenson, Jones, and Davis (peers with similar missions).

19   7.     Distinguished Flying Cross – Jones (second award for the same campaign.)

20   8.     Navy Cross Award – Thies (peer, same era, similar missions as Bergstrom.

21   9.     Dec. 1942 Awards Serial 03647 plain error citing Serial 23 Air Medal award.

22   10.    Air Medal Award

23   11.    Deck Log *USS U.S. Grant* 17 June 1942

24   12.    Bergstrom's war diary for June 1942

25   13.    Patrol Wing 4 logbook excerpts for 10 – 19 June 1942

26   14.    Newspaper clipping, LA Times – 8 Sept 1942

27   15.    1943 Perkins request for DFC for Bergstrom.

28   16.    Distinguished Flying Cross Award.

29   17.    1946 Admiral Horne Board Serial 3737 Recommendation.

30   18.    Captain Bergstrom DD215 (corrected DD214) noting Bronze Star Award.

31   19.    2003 Plaintiff's application for Navy Cross de novo review and award.

32   20.    2003-2004 Navy Review and Denials, erroneously citing "*upgrade*."

33   21.    2006 Plaintiff's request to Department of Defense.

34   22.    2005 Representative Baird response citing Navy's denial of "*upgrade*."

35   23.    2010 February NDBDM and BCNR denial letters.

36   24.    2015 letter to Senator Murray from Chief of Naval Operations.

37   25.    Navy 2018 final action Denial.

38   26.     "*In the Hands of Fate: Patrol Wing Ten*, 1941," Messimer, 1985,  pgs. 162-163.

39   27.    Declassified Radio Messages, June 1942.

40   28.    U.S. National Oceanic and Atmospheric Administration ocean temperatures.

41   29.    "*PBY The Catalina Flying Boat*" by Roscoe Creed, 1985, pg. 129

42   30.    USS Gillis Deck Log.