1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10    ROBERT BERGSTROM, et al.,                CASE NO. C21-55 MJP

11                        Plaintiffs,           ORDER ON CROSS-MOTIONS
                                                FOR SUMMARY JUDGMENT

12            v.

13    THE UNITED STATES NAVY, et al.,

14                        Defendants.

15

16         This matter comes before the Court on the Parties' Cross-Motions for Summary

17    Judgment. (Dkt. Nos. 41, 43.) Having reviewed the Cross-Motions, the Oppositions (Dkt. Nos.

18    44, 45), and all supporting materials, the Court GRANTS Defendants' Cross-Motion and

19    DENIES Plaintiffs' Cross-Motion.

20                                    **BACKGROUND**

21         Plaintiffs Robert and Thomas Bergstrom seek an order compelling the United States

22    Navy to award their late father, Captain Edward Bergstrom, a Navy Cross for his acts of heroism

23    during an offensive in the Aleutian Islands in June 1942. (Pls. Mot. for SJ at 8 (Dkt. No. 41).)

24

1    The Court reviews the portions of the administrative record concerning Captain Bergstrom's

2    bravery, the awards he received, and Plaintiffs' efforts to appeal the Navy's decision not to

3    award Captain Bergstrom the Navy Cross.

4    **A.    Captain Bergstrom's service in World War II and the Distinguished Flying Cross**

5            Captain Bergstrom served in the United States Navy from January 1939 to July 1965, and

6    died shortly after his retirement in 1967. (Am. Compl. ¶¶ 6, 41 (Dkt. No. 22).) He served during

7    World War II and saw action in a number of locations during the war. This action focuses on his

8    efforts in June 1942, when he flew a Consolidated PBY-5A Catalina amphibious seaplane during

9    the Aleutian Islands Campaign. During this campaign, Captain Bergstrom was a Lieutenant and

10   a Patrol Plane Commander (PPC) with the VP-42. (CAR0000002.) He flew his Consolidated

11   PBY-5A through aerial patrols and both torpedo and bombing sorties against Japanese targets in

12   the Aleutian Islands in June 1942. (Am. Compl. ¶¶ 51-52; CAR000120.) He endured extreme

13   and hazardous conditions, exhaustion, an unwieldy aircraft, and stiff enemy resistance while

14   performing bombing runs on Kiska Harbor and other targets in June 1942. (CAR0000002;

15   CAR000117.)

16           As a result of Captain Bergstrom's efforts in the Aleutian Islands Campaign, his Wing

17   Commander, L. E. Gerhes, recommended in July 1942 that he receive a Navy Cross with a

18   citation as follows:

19           For extraordinary heroism and distinguished conduct in the line of his profession and in
             the face of the enemy. During the enemy bombing of Dutch Harbor and Umnak and
20           thereafter Lieutenant Bergstrom, as a patrol plane commander, eagerly accepted
             extremely hazardous scouting missions and participated in all-night aerial patrols and
21           bombing attacks on enemy ships in Kiska Harbor against concentrated air and anti-
             aircraft opposition.
22
23   (CAR000120.) Captain Bergstrom did not receive the Navy Cross as recommended. Instead, it

24   appears from the administrative record that the Awards Board never received or reviewed the

1   recommendation. (CAR000121.) But as Plaintiffs point out, five other pilots outside of Captain

2   Bergstrom's patrol squadron that participated in the Aleutian Islands Campaign were granted the

3   Navy Cross based on recommendations from L.E. Gerhes. (CAR000038.)

4          Later in 1942, Captain Bergstrom received an Air Medal award for his bravery during the

5   Aleutian Islands Campaign. (CAR000118; CAR000121.) The Air Medal award is far less

6   prestigious than the Navy Cross. The Navy Cross is the second most prestigious medal, while the

7   Air Medal is ranked fourteenth. (See Am. Compl. ¶ 40)

8          Not long after receiving the Air Medal award, Captain Bergstrom's Patrol Squadron

9   Commander recommended he receive a Distinguished Flying Cross (DFC) in lieu of the Air

10   Medal. (CAR000160-161; CAR000189.) The reason the DFC was recommended was to correct

11   "errors" identified in the awards process, though those "errors" do not appear to refer to the fact

12   the Navy never acted on the Navy Cross recommendation. (CAR000160.) Rather, the "errors"

13   refer to the fact that at least nine other Patrol Plane First Pilots were awarded the DFC for similar

14   conduct during the same Aleutian Islands Campaign, while just three others, including Captain

15   Bergstrom, were only awarded the Air Medal. (CAR000160.) The Patrol Squadron

16   Commander's recommendation explains that these "discrepancies came about" due to the fact

17   that Bergstrom and two others had been "inadvertently omitted from the recommendations

18   forwarded for this squadron, probably due [to] the enormous clerical work load at that time."

19   (Id.) The letter confirmed that "[t]he Wing Secretary was informed of this by memorandum

20   dated July 4, 1942." (Id.) And "[s]ubsequent recommendations apparently received different

21   treatment from the Pacific Fleet Board of Awards, which resulted in the embarrassing

22   circumstances" that left Captain Bergstrom and two others off the ranks of DFC recipients. (Id.)

23   The Commander noted Captain Bergstrom's bravery during the Aleutian Islands Campaign and

24

1  "requested steps be taken to bring about the award of Distinguished Flying Cross to [Bergstrom]

2  . . . with a citation similar to those already awarded in the Wing for the period 1-16 June 1942."

3  (Id.)

4          As a result of this new recommendation, Captain Bergstrom was awarded the

5  Distinguished Flying Cross in May 1943. (CAR000161-62.) The Award contains the following

6  citation:

> For heroism and extraordinary achievement while participating in aerial flights as Patrol Plane Commander during the Aleutian Islands Campaign against enemy Japanese forces from June 10 to 20, 1942. In spite of high winds, snow, rain, and fog, Lieutenant Bergstrom took part in extremely hazardous scouting missions during the enemy bombing of Dutch Harbor and Umnak and, in the face of determined Japanese air assaults and anti-aircraft fire, he participated in all-night aerial patrols and bombing attacks on enemy ships in Kiska Harbor. His expert airmanship, cool courage, and outstanding devotion to duty were in keeping with the highest traditions of the United States Naval Service.

12  (CAR000189.) The Distinguished Flying Cross is the eighth most prestigious award. (See Am.

13  Compl. ¶ 40.)

14  **B.      The Horne Board's Review of Captain Bergstrom's Distinguished Flying Cross**

15          After the end of hostilities in World War II, the Secretary of the Navy convened the flag

16  level Board of Review for Decorations and Medals (the Horne Board) to review all

17  recommendations for personal decorations that had been downgraded or resulted in no award.

18  (CAR000042; CAR000148.) The purpose of the Horne Board was to "assure, in so far as

19  practicable, that no oversights, injustices, or omissions remain." (CAR000148.) In 2018, the

20  Navy explained the purpose of the Horne Board to Plaintiffs as follows:

> The charter of the Horne Board was to review cases in which award nominations had either been disapproved, or the award presented was lower than had been nominated. The intent was to improve equity across the Navy, since so many awards had been made by commanders with delegated authority. Spanning 15 months, the review included 30,000 cases, and more than five thousand awards were upgraded or newly approved. The board decided that in no case would they revoke an already approved award, even when they felt it had been inappropriate for the actions and circumstances. Apparently they saw

1    many cases of that type. In Admiral Horne's final report to SECNAV, he said many

2    awards of the Navy Cross had been inappropriate. Citing two egregious examples, he

     then summarized "the greatest number of abuses in award of the Navy Cross was in

3    awards made to aviation personnel. Here again, the Distinguished Flying Cross or Air

     Medal were in many cases the appropriate awards."

4    (CAR000005 (emphasis in original).)

5        On December 19, 1946, the Board considered the original recommendation for the Navy

6    Cross from Captain Bergstrom's Wing Commander, and resolved not to upgrade the DFC award

7    to a Navy Cross. (CAR000149.) The Board's review of the Navy Cross recommendation is

8    evident in the fact that the Memo states the Board "reviewed the case cited in reference (a),"

9    where "reference (a)" refers to the same serial number and date listed on the Wing Commander's

10   July 19, 1942 recommendation for the Navy Cross. (Compare CAR000149 with CAR000123

11   (both referencing letter P15 Serial 0266 dated July 19, 1942).)

12   **C.      Plaintiffs' 2003 Review Request**

13       In 2003, Plaintiff Robert Bergstrom asked that his father's eligibility for the Navy Cross

14   be reviewed and that the Navy consider the July 19, 1942 Navy Cross recommendation on the

15   theory that it had never been properly considered. (CAR000051-56.) The request noted that at

16   least two other members of Captain Bergstrom's squadron were awarded Navy Crosses for their

17   actions during the same campaign. (CAR000055.)

18       In an internal Navy memorandum, the Navy's Awards Branch noted that it was not clear

19   whether Plaintiff Robert Bergstrom wanted a separate award of Navy Cross or whether he sought

20   the DFC to be upgraded to a Navy Cross. (CAR000057.) But the memo drafter explained that

21   "[p]er my recent telecon with [Robert Bergstrom], he indicated upgrade of the DFC to a NX."

22   (Id.) The memo noted that the Navy Cross recommendation cites to acts that "mirrored those

23

24

1    actions of the DFC" award and that despite three reviews, the DFC was awarded, not the Navy

2    Cross. (Id. at CAR000057-58.)

3          On July 16, 2003, the Acting Secretary of the Navy stated that "[a]fter carefully

4    considering the request [from Plaintiff Robert Bergstrom] . . . no upgrade to the previously

5    approved Distinguished Flying Cross is approved." (CAR000060.) The letter acknowledged

6    Captain Bergstrom's accomplishments, but noted that the case had been reviewed several times

7    and the DFC was consistently awarded. (Id.) Plaintiff Robert Bergstrom then added additional

8    information to his request. (See CAR000066.) In response, the Secretary, Board of Decorations

9    and Medals explained that the original Navy Cross recommendation had been considered by the

10   Horne Board and that no further award would be granted. (Id.)

11   **D.    Plaintiffs' 2009 Application**

12         In 2009, Plaintiff Robert Bergstrom applied for a retroactive award of the Navy Cross for

13   his father. (CAR000036.) The request asked for "[r]etroactive awarding of the Navy Cross

14   decoration per commanding officer Patrol Wing FOUR recommendation letter P15 Serial 266

15   dated July 19, 1942." (CAR000036.) Plaintiff explained the basis for his request as follows:

16         Recommendation letter p15 Serial 0266 dated July 19, 1942 was not submitted to the
          awards branch due to a Wing secretary submission error. Submission was done to awards
17        branch in 2003 for award but was denied in error due to incomplete review. Subsequent
          appeals were denied. No response was given to question as why award was not made
18        when all other pilots whose recommendation letters were submitted to awards branch in
          1942 were awarded the Navy Cross for the same exact bombing missions and actions.
19
20   (CAR000036.) The application did not specify any other actions that Plaintiffs believed merited

     the Navy Cross.

21
22         The request was sent to the Navy Department Board of Decorations and Medal

     (NDBDM). (CAR000045.) On June 17, 2010, the NDBDM recommended denial of the request

23   for an upgrade to the Navy Cross, citing its "careful review of this case" and its conclusion that

24

1    there were no material errors or injustice in awarding the DFC. (Id.) The NDBDM confirmed

2    that the Horne Board had considered the Navy Cross recommendation. (Id.) The NDBDM noted:

3        Commanders at the time were charged by the Secretary of Navy with determining what
         level of award, if any, was appropriate to recognize deserving sailors and officers. It is
4        not the place of the NDBDM to substitute our judgment for that of the commanders at
         that time. Our standard, per reference (b), is that unless new and relevant information is
5        presented that was not available to previous decision makers, the case does not deserve
         reconsideration by the Secretary of the Navy.
6
     (CAR000043.) The NDBDM further noted:
7
8        It is apparent from our review that a fully functioning award system was in place in
         Captain Bergstrom's chain of command. Some pilots did receive the Navy Cross, while
9        others received lower awards. It is impossible for us to know how those decisions were
         made as the detailed notes of the awards process in those units could not be located. In
         the absence of such records, we must presume regularity.
10
     (CAR000043.)
11
12       The Navy Board of Corrections of Naval Records (Board) then substantially concurred

13   with the NDBDM recommendation and concluded that "the evidence submitted [by Plaintiffs]

     was insufficient to establish the existence of probable material error or injustice." (CAR000049.)
14
     Plaintiffs did not seek judicial review of the denial of the application.
15
     **E.    Plaintiffs' 2017 Application/Request for Reconsideration**
16
17       Plaintiff Robert Bergstrom, through counsel, filed a new application to correct the

18   military record on August 8, 2017. (CAR000001-000004.) The Navy construed the application

19   as a request for reconsideration of the June 2010 denial. (CAR000034-35.) Plaintiffs' application

20   stated that it was not a request for an upgrade, but was intended to "correct" an injustice pursuant

21   to 10 U.S.C. § 1130(c) and 10 U.S.C. § 1552. (CAR000002.) The demand expressed the belief

22   that Captain Bergstrom should be awarded the Navy Cross because the recommendation for the

23   Navy Cross "absent the errors certainly would have been awarded." (CAR000003.) The letter

24

1  also references "new evidence" considering Captain Bergstrom's role in preventing in a Japanese

2  submarine attack. (CAR000005.)

3       The Navy reexamined its 2010 decision in light of the new request and materials

4  submitted. (CAR000034-35.) The Secretary of the Navy Council of Review Boards issued an

5  Advisory Opinion, in which it noted that the Horne Board had reviewed the original Navy Cross

6  request and that there was no evidence presented that the conclusion it reached was erroneous.

7  (CAR000005-6.) Plaintiffs served objections to the Advisory Opinion. (CAR000008-33.)

8       After considering Plaintiffs' response to the Advisory Opinion, the Board denied

9  Plaintiffs' request in full on October 11, 2018, and noted that its decision constituted a final

10 agency action. (Id.) The Board noted that after "a careful and conscientious consideration of the

11 entire record, the board found the evidence submitted was insufficient to establish the existence

12 of probable material error or injustice." (CAR000034.) The Board concurred with the Advisory

13 Opinion. (Id.) The Board noted that the case had been reviewed several times and that "it was

14 decided at the highest levels of the Department of the Navy, that the DFC was the appropriate

15 recognition." (CAR000035.)

16      Plaintiffs then filed this action within 3 years of the October 2018 denial.

17                                          **ANALYSIS**

18 **A.    Default Judgment**

19      Plaintiffs first ask the Court to enter default judgment in their favor on the theory that

20 Defendants provided only "vague or contradictory blanket responses" to the amended complaint.

21 (Pls. MSJ at 1 (Dkt. No. 41).) This request has no merit. Though Plaintiffs may be unsatisfied

22 with the contents of Defendants' answer, they are not entitled to default judgment. Indeed,

23 Plaintiffs have not and cannot move for entry of default given the filing of the answer. See Fed.

24

1   R. Civ. P. 55(a); Local Rule 55(a). And without entry of default, Plaintiffs are not entitled to

2   default judgment. See Local Rule 55(b). The Court DENIES this request.

3   **B.    Jurisdiction and Legal Standard**

4           The Parties agree that Plaintiffs' claims are cognizable under the Administrative

5   Procedures Act. Under the APA, Plaintiffs bear the burden of demonstrating that the Board's

6   denial of their 2017 petition was arbitrary, capricious, or not based on substantial evidence.

7   Guerrero v. Stone, 970 F.2d 626, 628 (9th Cir. 1992); Chappell v. Wallace, 462 U.S. 296, 303

8   (1983). "This standard of review is 'highly deferential, presuming the agency action to be valid

9   and affirming the agency action if a reasonable basis exists for its decision." Nw. Ecosystem All.

10  v. U.S. Fish & Wildlife Serv., 475 F.3d 1136, 1140 (9th Cir. 2007) (quotation omitted). The

11  Court may not substitute its own judgment, but it must instead "ensure that the agency

12  considered the relevant factors and articulated a rational connection between the facts found and

13  the choices made." Id. (quotation omitted). In performing this analysis, the Court's review is

14  limited to the administrative record. See id.; Camp v. Pitts, 411 U.S. 138, 142 (1973).

15  **C.    The 2018 Decision Withstands Scrutiny under the APA**

16          Plaintiffs fail to demonstrate that the Board's denial of their 2017 request for

17  reconsideration was arbitrary or capricious. To unpack that conclusion, the Court first assesses

18  the nature of the claim and the Board's classification of the 2017 application as a request for

19  reconsideration. The Court then considers whether the Board's denial withstands scrutiny under

20  the APA.

21          **1.    Nature of the Claim and the Classification of the 2017 Application**

22          Plaintiffs seek judicial review of the Board's denial of their 2017 application to correct

23  the military record of their father. The Secretary of the Navy has authority to correct the military

24

1    records of servicemembers "when the Secretary considers it necessary to correct an error or

2    remove an injustice." 10 U.S.C. § 1552(a)(1). Any "such correction shall be made by the

3    Secretary acting through boards of civilians of the executive part of that military department." Id.

4    A request for correction must be made by the claimant, or their heir or representative, "within

5    three years after discovering the error or injustice," but the civilian board also has authority to

6    excuse a failure to file within three years "if it finds it to be in the interest of justice." Id. at §

7    1552(b).

8            Although Plaintiffs waited more than three years from the 2010 denial of the 2009

9    application, the Board exercised its authority to consider the 2017 petition "in the interests of

10   justice." In so doing, the Board acted within its authority to construe the 2017 petition as a

11   request for reconsideration of the 2010 denial and to determine whether the newly submitted

12   materials provided a basis for reconsideration. See 10 U.S.C. § 1552(b). Accordingly, the Court

13   treats the 2018 denial of the 2017 application as a denial of a request for reconsideration of the

14   2010 decision on the 2009 application.

15           **2.    Plaintiffs Fail to Demonstrate the Board Violated the APA**

16           Plaintiffs have not demonstrated that the Board's 2018 denial is arbitrary or capricious.

17   The Board reasonably concluded that no new award should issue because Captain Bergstrom's

18   "case has been reviewed several times, and it was decided at the highest levels of the Department

19   of the Navy, that the DFC was the appropriate recognition." (CAR000034-35.) This conclusion

20   stems from the critical fact that the Horne Board considered the Navy Cross recommendation

21   shortly after the end of World War II and determined that the DFC was the appropriate award.

22   As the 2018 Advisory Opinion explains, the Horne Board was "a Secretarial level review board

23   whose express purpose was to determine whether the [DFC] award had been appropriate and

24

1    equitable." (CAR000005-6.) "The official records indicates that Captain Bergstrom's case got a

2    valid review in 1946, and that his case was decided according to the same standards applied to

3    other cases." (CAR000006.) The Advisory Opinion explains that the Horne Board's "senior

4    officers certainly possessed more familiarity than could anyone alive today with the standards

5    and practices during WW II, and with the great many actions for which Service members had

6    been nominated for approved." (Id.) This is consistent with the NDBDM's 2010

7    recommendation to the Board that "[i]t is apparent from our review that a fully functioning

8    awards system was in place in Captain Bergstrom's chain of command." (CAR000043.) That

9    recommendation also stated that while "[i]t is impossible to know how those decisions [to award

10   some Navy Crosses and some DFCs] were made, . . . we must presume regularity."

11   (CAR000043.) Although Plaintiffs submitted substantial evidence to the Board, they failed to

12   convince the Board that the Horne Board's review was irregular or that the Board did not

13   consider the Navy Cross recommendation despite its explicit reference to having done so.

14   Plaintiffs have similarly failed to point to any such evidence in the record in this action and the

15   Court applies a presumption of regularity to the Horne Board's actions. See Agnov v. Lynch, 788

16   F.3d 893, 905 (9th Cir. 2015). The Court therefore finds that the Board's 2018 denial withstands

17   judicial scrutiny under the APA because the Board "considered the relevant factors and

18   articulated a rational connection between the facts found and the choices made." Nw. Ecosystem

19   All. v. U.S. Fish & Wildlife Serv., 475 F.3d at 1140 (quotation omitted).

20           Plaintiffs' contrary arguments rests on two unjustifiable assumptions. First, Plaintiffs

21   assume that had the Wing Commander's 1942 recommendation for the Navy Cross been

22   properly delivered to the Awards Board, the Navy Cross would have been awarded. This is

23   speculation based only on the fact that other pilots were awarded the Navy Cross for acts taken

24

1    during the same campaign based on the same Wing Commander's recommendation. But the

2    basis for each award of the Navy Cross was unique to the recipient and the Wing Commander's

3    recommendation was merely a necessary predicate, not a self-executing step in the award of the

4    Navy Cross. Second, Plaintiffs presume that the Horne Board did not consider the Wing

5    Commander's Navy Cross recommendation even though the Horne Board's memorandum

6    specifically states that it did. Plaintiffs speculate that the Horne Board could not have reviewed

7    the recommendation because it was not in Captain Bergstrom's personnel file. But Plaintiffs

8    offer no evidence that the Horne Board did not do what it says it did. Plaintiffs' argument invites

9    the Court to speculate as to what the Horne Board may not have done, which runs contrary to the

10   presumption of regularity. See Agnov, 788 F.3d at 905.

11        Given the deferential standard of review and the absence of evidence of material error or

12   any arbitrary or capricious conclusion underpinning the 2018 denial, the Court GRANTS the

13   Defendants' Cross-Motion and DENIES Plaintiffs' Cross-Motion as to this claim.

14   **D.    Plaintiffs' Demand for New Awards is Unexhausted**

15        Plaintiffs also ask the Court to direct Defendants to award Captain Bergstrom a

16   Distinguished Flying Cross, a Medal of Honor recommendation or Navy Cross, and a Silver Star

17   or Navy Cross for three other separate acts of bravery during World War II. (Dkt. No. 41 at 8-

18   12.) But these demands have not been administratively exhausted. These demands were not

19   contained in the 2009 application and the Board properly did not consider them in resolving the

20   2017 reconsideration request (to the extent the demands were actually contained in the 2017

21   request). As such, there has been no final agency action that can be challenged under the APA.

22   See 5 U.S.C. § 704; Wild Fish Conservancy v. Jewell, 730 F.3d 791, 800 (9th Cir. 2013). Any

23   demand for an award of these medals or awards must first be made through separate application

24

1    to the Board. Accordingly, the Court GRANTS Defendants' Cross-Motion and DENIES

2    Plaintiffs' Cross-Motion as to this claim.

3    **E.    No Claim for Money Damages under the Little Tucker Act**

4        Defendants wrongly assert that the Court has no jurisdiction to entertain Plaintiffs' Little

5    Tucker Act claim for money damages. Defendants argue that Plaintiffs cannot pursue claims for

6    monetary damages under the Little Tucker Act because they have not identified a money-

7    mandating statute as required by the Tucker Act. (Def MSJ at 12 (Dkt. No. 43).) But the Court

8    has already determined that Plaintiffs' claim for damages can be brought against the United

9    States under the Little Tucker Act because 10 U.S.C. § 1552(c) authorizes the provision of

10    compensation and other pecuniary benefits to the claimant. (See Order on MTD at 5.)

11    Defendants essentially ask for untimely reconsideration of the Court's Order on the Motion to

12    Dismiss. The Court declines to grant this relief.

13        But while the Court has jurisdiction over this claim, Defendants are entitled to entry of

14    summary judgment in their favor. Because Plaintiffs have not shown any basis for the Navy to

15    reconsider the denial of Plaintiffs' request for a Navy Cross, Plaintiffs are not entitled to relief

16    under their Little Tucker Act. As such, the Court enters summary judgment in Defendants' favor

17    as to the Little Tucker Act claim.

18                                **CONCLUSION**

19        The Court's decision will undoubtedly disappoint Plaintiffs in their quest to seek further

20    recognition for their father's brave actions during World War II. The Court's Order today passes

21    no judgment on the nature of Captain Bergstrom's service, his heroism, or the value of his

22    accomplishments to the United States. Rather, it simply determines that Plaintiffs have failed to

23    meet the very high burden they face in challenging Defendants' denial of their application. The

24

1    Court finds that Defendants' determination withstands judicial scrutiny—it is a logical and

2    reasoned denial of the requested relief that does not appear arbitrary, capricious, or contrary to

3    law. For this reason, Defendants are entitled to entry of summary judgment in their favor. And

4    because Plaintiffs have failed to exhaust their request for additional awards and recognition,

5    Defendants are also entitled to summary judgment in their favor as to those claims. The Court

6    therefore GRANTS Defendants' Cross-Motion and DENIES Plaintiffs' Cross-Motion.

7    Defendants are entitled to entry of summary judgment in their favor as to all claims asserted in

8    this matter.

9           The clerk is ordered to provide copies of this order to all counsel.

10          Dated August 3, 2022.

11

12                                                Marsha J. Pechman
                                                  United States Senior District Judge
13

14

15

16

17

18

19

20

21

22

23

24